(No. 32902.—　　　　　)
EMMA AMBROSIUS, Appellee, *vs.* MEYER KATZ *et al.,* Appellants.

*Opinion filed January 20, 1954.*

174

John B. Harris, of Granite City, for appellants.

James O. Monroe, Jr., of Collinsville, for appellee.

Mr. Justice Maxwell delivered the opinion of the court:

This is a direct appeal from a decree of the circuit court of Madison County setting aside two deeds as clouds upon the title to certain real estate and reinvesting appellee with title to the premises. A freehold is involved.

On January 23, 1946, appellee was the owner in fee simple of a residence property at 102 Sumner Boulevard in Collinsville, Illinois. On that date she conveyed this property to one Frank Ciuferi, reserving to herself a life estate. The consideration recited in the deed was past services rendered and money expended by grantee on behalf of appellee, one dollar in cash, the payment by grantee of a certain mortgage indebtedness upon the property and the

payment by grantee of all future medical and funeral expenses of grantor and the further payment, after the death of appellee of the sum of $1000 to St. John's Evangelical Church of Collinsville. Ciuferi accepted the conveyance and up to June 7, 1951, expended the sum of $5328.60 in performance of his obligations under the deed.

Appellee had an adopted daughter named Della Mae Simpson who was married and lived on Portland Avenue in Collinsville. Appellee and her adopted daughter had had practically no contacts for some sixteen years prior to November, 1950. In November, 1950, appellee was about 80 years of age and was living alone in the Sumner Boulevard property. She then became ill and she and her adopted daughter renewed their family ties and relationships, and during January, 1951, appellee left her Sumner Boulevard property and went to live with Mrs. Simpson at the Simpson home on Portland Avenue. Appellee advised her adopted daughter that she had made a conveyance of her Sumner Boulevard property to Ciuferi and informed her of the terms and conditions contained in the deed, and they discussed the possibility of buying the property from Ciuferi and living in it together in their renewed relationship as mother and daughter.

On April 24, 1951, Della Mae Simpson and her husband entered into a written contract with Ciuferi whereby Ciuferi agreed to convey the property to them upon repayment to him of the sum of $5328.60 which he had expended under the terms and conditions of his deed from appellee, and the assumption by the Simpsons of the future obligations of care, support, medical and funeral expenses of appellee and the payment to St. John's Church.

On April 25, 1951, appellee consented in writing to the execution of the agreement between Ciuferi and the Simpsons and to the sale of the real estate to the Simpsons subject to the conditions contained in the deed from appellee to Ciuferi.

The Simpsons were unable to raise the money to make the $5328.60 payment to Ciuferi, so long as the prior encumbrances placed upon the property by the deed from appellee to Ciuferi were not released. They were advised by a representative of a loan company that they could obtain a loan on the premises if they could get a release of the obligations contained in the deed from appellee to Ciuferi. On June 7, 1951, Ciuferi and his wife and the trustees of St. John's Church executed and delivered a warranty deed to Della and Harold Simpson in joint tenancy, and the Simpsons executed and delivered a mortgage to secure the payment of a $9000 loan which they obtained from the loan company. Out of the proceeds of the $9000 loan Ciuferi was paid $5328.60, the trustees of St. John's Church were paid $1000, the sum of $226.72 was used to pay taxes, and loan expenses amounted to $36. The balance of $2408.68 was paid by the loan company to the Simpsons. No part of the $9000 was paid to appellee. On the same date the Simpsons listed the property for sale with one Morris.

On or about June 15, 1951, appellee and Della Mae Simpson and her family moved into the Sumner Boulevard property and lived there until about August 15, 1951, when the daughter and her family left the Sumner Boulevard property and returned to their home on Portland Avenue. Appellee continued to occupy the Sumner Boulevard place as her residence and continued to so occupy it at the time of the filing of this suit.

On September 11, 1951, the Simpsons listed the Sumner Boulevard property for sale with the appellant Meyer Katz, who was a real-estate broker, and he was to sell the property for $17,500 net.

On October 8, 1951, the appellants Meyer Katz and Frances Katz purchased the property from the Simpsons for the sum of $1000 and the further sum of $500 to be paid to Harold Simpson for certain work which was to be

done by him for Meyer Katz. Meyer Katz and Frances Katz assumed and agreed to pay the $9000 mortgage on the premises, no part of which had been paid. Meyer Katz and Frances Katz had actual knowledge that appellee was residing upon the premises, but made no inquiry of her regarding her rights therein.

On November 13, 1951, appellee filed this suit. The allegations of the complaint, so far as they are material here, are to the effect that at the time of the conveyance by appellee to the Simpsons on June 7, 1951, the Simpsons made certain false and fraudulent representations to appellee and took false and fraudulent advantage of their position and relationship of trust and confidence to appellee, and that she was induced by these representations by the Simpsons and the abuse of their position of trust and confidence to execute the deed to them, and that in furtherance of a scheme to deprive appellee of her rights in said land the Simpsons executed and delivered their deed of October 8, 1951, to Meyer and Frances Katz. The complaint further alleged that there was no consideration paid by the Simpsons for their deed from appellee, and prayed that the deeds from appellee to the Simpsons and the deed from Simpsons to Meyer and Frances Katz be removed as clouds upon her title and that she be reinvested with title to the premises.

The Simpsons and the Katzes filed separate answers denying the material allegations of the complaint.

The cause was referred to a special master who conducted hearings and made a report of his findings of fact and conclusions of law. Separate objections to the master's report were filed by the Simpsons and the Katzes. These were overruled by the master, and by stipulation of counsel the objections were allowed to stand as exceptions. The chancellor overruled the exceptions and entered a decree in accordance with the master's findings and conclusions. The court found that by reason of appellee's age, infirmities, dependent status and relationship, and by reason of their

written and oral agreements with appellee, the Simpsons occupied a fiduciary relationship toward appellee; that appellee was induced to execute and deliver the deed to the Simpsons by their written and oral promises and agreements to provide for her support and maintenance, and that they led her to believe that she would retain her life estate in the Sumner Boulevard property and that her care and support would be furnished to her there; that of the sum of $9000, secured by the Simpsons by reason of their mortgage, $6591.32 was devoted to charges on the property, and that the balance of $2408.68 was received by the Simpsons, and that they never accounted to appellee for any part thereof; that there was no monetary consideration nor anything of value given for appellee's deed to the Simpsons, and that there was no other consideration therefor except the written and oral promises to appellee to provide services or care, to allow her a life estate, and to pay medical, hospital and funeral expenses, and that all of such purported considerations were vitiated by the Simpsons' fraudulent intentions and by their subsequent abandonment of such agreements. The court further found that by reason of the knowledge of Meyer Katz and Frances Katz that appellee was in possession and their failure to inquire of her concerning her rights they were charged with notice of her rights in the property.

The lower court also entered a judgment in favor of appellee and against the Simpsons for the sum of $2408.68, being the balance of the loan taken by the Simpsons after payment of charges upon the property, taxes and loan expenses, and decreed that the $9000 mortgage was a valid lien because appellee had knowledge of its execution by the Simpsons and most of the proceeds were used to pay off valid charges against the property.

Meyer Katz and Frances Katz prosecute this appeal. The Simpsons did not appeal from the decision of the lower court.

Appellee filed a motion to strike appellants' brief for the reason that (1) it fails to state specifically the errors relied on for reversal, and (2) it contains impertinent, vituperative and scandalous remarks. The assignments of error in appellants' brief consist of the following general statements: "The court erred in disallowing appellants' exceptions to the Master's report and recommendations, and in approving said report;" "The court erred in rendering the decree appealed from;" "The decree is contrary to the manifest weight of the evidence;" and "The decree is contrary to the law." These are not the type of statement of errors relied upon for reversal contemplated by Rule 39 and are not at all helpful to the court in defining the issues on appeal. The statement of errors should be clear and specific and should not be presented in terms which are mere generalities or ambiguous or arduous. The manifest purpose of Rule 39 is to afford courts of review an opportunity to know what they are called upon to determine, without being compelled to search the record, briefs and arguments to ascertain the issues present on the appeal. To compel the court to follow and analyze a brief and argument in order to determine the issues on appeal is placing an unnecessary and unfruitful task upon the court. *Gyure* v. *Sloan Valve Co.* 367 Ill. 489.

Briefs should not contain language which is disrespectful to the court or its officials. The canons of ethics of the American Bar Association make it the duty of every lawyer to maintain a respectful attitude to the court for the maintenance of its dignity and its supreme importance. Counsel for appellants in his brief refers to the contents of the master's report as "claptrap" and to the findings of the lower court as "false, ridiculous, unfounded, irrelevant, immaterial and wholly improper" and refers to the master's findings and the decree as "something not only novel in jurisprudence, but something that has doubtless never been even imagined before or conjured up in the wildest dreams

of the most zealous advocate." The brief also contains other remarks disrespectful to the master and to opposing counsel. To allow briefs containing such objectionable matter to pass without comment would not tend to promote the administration of justice. They are unbecoming to the dignity of the court and the professional conduct of members of the bar. *Zukas* v. *Appleton Mfg. Co.* 277 Ill. 87.

It is apparent from the foregoing that appellee's motion to strike the brief is not without merit. However, since we can see no useful purpose to be served in striking appellants' brief, we choose to decide the case upon its merits without requiring new briefs.

There are two contentions in appellants' brief and argument which require our attention. They are in substance as follows: (1) that the evidence does not sustain the finding of the court that the Simpsons occupied a position of trust and confidence toward appellee and that the court therefore erred in setting aside the deed from appellee to the Simpsons, and (2) that the court erred in finding that Meyer Katz and Frances Katz were charged with notice of appellee's rights in the property because they knew she was in possession and failed to inquire of her concerning her claims.

We have carefully examined the record and there can be no doubt that at the time of the execution of the deed from appellee to Della Mae and Harold Simpson they occupied a fiduciary relationship toward appellee. Appellee was then a widow, more than 80 years of age and in ill-health, she lived with her daughter and depended upon her to look after her, she took her daughter into her confidence and explained to her that she had conveyed her property to a stranger upon certain considerations and conditions recited in her deed to Ciuferi, she rightfully expected her daughter to take care of things for her and to protect her interests in any transactions entered into in regard to the Sumner Boulevard property. Under these circumstances, a fiduciary

or confidential relationship existed. *Stephenson* v. *Kulichek,* 410 Ill. 139; *Kester* v. *Crilly,* 405 Ill. 425; *Suchy* v. *Hajicek,* 364 Ill. 502.

When the existence of a fiduciary relationship has been established the law presumes that any transaction between the parties by which the dominant party has profited is fraudulent, and while the presumption is not conclusive but may be rebutted by clear and convincing proof that the dominant party has exercised good faith and has not betrayed the confidence reposed in him, the burden rests upon the dominant party to produce such evidence and if the burden is not discharged, the transaction will be set aside in equity. *Sawyer* v. *Creighton,* 403 Ill. 364; *Dombrow* v. *Dombrow,* 401 Ill. 324.

The record in this case discloses that the Simpsons not only abused the confidence placed in them by appellee, but that they failed to account to appellee for the excess of the proceeds of their mortgage over and above what was required to pay off the valid charges against her property. They quickly abandoned their oral and written promises to live with her and look after her. They did not protect her interests in the property, but, on the contrary, they listed the property for sale the same day they acquired the deed from appellee. The Simpsons failed utterly to produce any evidence tending to show good faith and the deed from appellee to the Simpsons must be set aside.

There remains the question of whether Meyer Katz and Frances Katz are *bona fide* purchasers for value without notice. There is no evidence in the record to show that the Katzes had any actual knowledge of the transaction between appellee and the Simpsons or that they were advised by anyone that appellee claimed to be the equitable owner of the property or that they were parties to any conspiracy to defraud appellee of her property. The record does show, however, and this is not disputed, that appellee was in actual and exclusive possession and occupancy of the

Sumner Boulevard property for some months before and at the time the deed from Simpsons to the Katzes was executed and that the Katzes failed to make any inquiry of her concerning her rights. Appellee contends that the Katzes are charged with notice of all facts which they would have learned had they inquired of appellee concerning her claims, and, having failed to inquire of appellee, they are not innocent purchasers.

A purchaser is bound to inquire of the person in possession by what tenure he holds and what interest he claims in the premises. It is well settled that whatever is sufficient to put a party on inquiry is notice of all facts which pursuit of such inquiry would disclose, and without such inquiry no one can claim to be an innocent purchaser as against him whose possession raises the inquiry. (*Bryant* v. *Lakeside Galleries, Inc.* 402 Ill. 466; *Miller* v. *Bullington,* 381 Ill. 238.) This rule protects a grantor whose grant was induced by fraud, but who, remaining in possession, can show such possession as notice of his equity against a subsequent grantee. (*White* v. *White,* 89 Ill. 460; *Ronan* v. *Bluhm,* 173 Ill. 277.) The purchaser cannot excuse himself by merely obtaining information as to how possession was obtained or inquiring of the grantor or of other persons as to the rights of the person in possession, but he is bound to inquire of the person in possession by what tenure he holds and what interest he claims. Open possession is sufficient to charge such purchaser with notice of all legal and equitable claims of the occupant. *German-American Nat. Bank* v. *Martin,* 277 Ill. 629.

It follows that appellants, Meyer Katz and Frances Katz, are charged with notice of appellee's rights and claims and therefore cannot claim immunity as *bona fide* purchasers.

The decree of the circuit court is affirmed.

*Decree affirmed.*