*In re* Application of County Treasurer.—(Willis T. Howell *et al.,* Petitioners-Appellants, v. Frank N. Edelen *et al.,* Respondents-Appellees.)

(No. 60393;

First District (5th Division)—June 13, 1975.

*Rehearing denied August 8, 1975.*

Gierach, Stambulis & Schussler, Ltd., of Oak Lawn (Will Gierach, of counsel), for appellants.

Ned Langer and Stuart Finkle, both of Chicago (Jeffrey Gottlieb, of counsel), for appellees.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from the grant of a motion to dismiss an amended petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72) which sought to vacate an order for the issuance of a tax deed. The petition sought relief against both the original tax purchaser's assignee, Elsie Lhotka, and her grantees, the Edelens. A motion to dismiss the petition was filed by the Edelens, and Elsie Lhotka filed a motion to strike and dismiss. The motion to Elsie Lhotka was denied, but the motion of the Edelens was granted and petitioners appeal from that order of dismissal, contending that (1) the tax deed was void and could therefore pass no interest to the Edelens; or (2) the Edelens were not bona fide purchasers but rather had notice from various facts of petitioners' claim to the property in question.

In July of 1969, Elsie Lhotka petitioned the circuit court for the issuance of a tax deed. In the petition she asserted that on February 16, 1967, her assignor, Suburban Tax Lien, had purchased the lot in question at the annual tax sale; [1] that a certificate of purchase was issued to said assignor, who subsequently transferred the certificate to Elsie Lhotka; that, as of the date of the petition, all taxes and assessments which became due since the date of the sale had been paid or would be paid prior to the request for the entry of an order for deed; and, that petitioner had complied with all notice requirements of section 263 and 266 of the Revenue Act. (Ill. Rev. Stat. 1969, ch. 120, pars. 744, 747.) She therefore prayed for an order directing the county clerk to issue her a tax deed and, further, that a writ of assistance issue to put her in possession.

In December of 1969 an "Application for an Order Directing the County Clerk to Issue Tax Deed" was filed by Elsie Lhotka, stating that

---

[1] Attached to the petition was a copy of the certificate of purchase, indicating Suburban Tax Lien paid $99.63 for the property at the sale.

the time of redemption had expired and no redemption was made; that all taxes and special assessments which became due since the date of the sale had been paid; that all notices required by law had been duly served and published; and that the petitioner had complied in all respects with the provision of the statutes of Illinois in relation to the issuance of tax deeds. This petition was accompanied by an affidavit of James Haleas, attorney for Elsie Lhotka, stating that he had inspected the premises on August 4, 1969; that the property was vacant and unimproved and had a frontage of 100 feet and a depth of 160 feet; that a certain trustee was the record owner of the property; that certain persons had been served with notice on certain dates; that unknown owners had been served by publication; and that all subsequent taxes on the property were paid.

On December 30, 1969, following a hearing, the order requested was entered pursuant to the court's finding that the assignee was the legal owner and holder of the certificate of purchase from the tax sale; that the period of redemption had expired; that all subsequent taxes had been paid; that all notices required by law had been given; that the evidence taken at the hearing established due diligence; and that there was no just reason to delay enforcement of the decree. Accordingly, an order was issued to the county clerk to deliver to Elsie Lhotka a tax deed, and further directing that a writ of assistance issue to put her in possession. A transcript of the hearing was also made and filed with the order.

Over 3 years later, on July 6, 1973, the Howells filed their original section 72 petition to vacate the December 30, 1969, order, granting Elsie Lhotka a tax deed. An amended petition was then filed wherein they alleged in substance that the tax deed was secured through acts of fraud in that (1) the affidavit presented to the court by the attorney for Elsie Lhotka fraudulently described the dimensions of the lot in question as having a frontage of 100 feet and a depth of 160 feet when, in fact, it was an irregular shaped lot with a frontage of 100 feet and a depth of 402.5 feet on one side and 461.5 feet on the other; (2) the lot was described as vacant, whereas aircraft tie downs were buried in the ground and aircraft parking and storage was regularly conducted on a portion of the lot; (3) the lot was described as unoccupied when, in fact, on August 4, 1969, and for some 2 years prior thereto, the easterly portion of the lot was occupied by the Howells and their tenants as a part of the Howell Airport; (4) the Howells, as occupiers of the lot in question, were entitled to personal notice before the expiration of the time of redemption as a condition precedent to the court's jurisdiction and the entry of a valid decree for tax deed, and that no such notice was given them as required by sections 263 and 266 of the Revenue Act; (5) the owners of the aircraft upon the lots were occupants who had not received

notice of the tax sale; (6) the right, title, and interest of Mabel Howell to the property was claimed by her in a complaint for separate maintenance filed June 2, 1969, and confirmed by the court in the divorce decree entered July 30, 1970, and that with the exercise of due diligence the tax purchaser and her grantees could have ascertained from the public records that she was entitled to notice.

Petitioners further asserted that they had no notice of the tax deed proceedings until about March 1, 1973, when one of the alleged bona fide purchasers for value, Frank Edelen, presented himself at the Howells' office at the airport and asked them to remove the aircraft parked on the lot in question. Petitioners alleged that the Edelens lived across the street from the property and were acquainted with the Howells and knew that the Howell Flying Service had improved and occupied the lot. Further, petitioners alleged that the Edelens were not bona fide purchasers in that they had notice of defects in the title from the errors apparent in the record of the tax deed proceedings, from an inspection of the premises which would have revealed the Howells' use of the property and its occupancy by aircraft belonging to the Howells' lessees, and from the further fact that the purchase price was substantially less than the actual value of the property.[2] The Howells' affidavit was attached to the petition, and it stated that from 1966 to its date the lot in question was occupied by various aircraft and improved with graded taxiways and an aircraft parking and storage area regularly used in the conduct of the business known as "Howell Airport." The airport, containing runway and hangers, occupies a 100-acre parcel adjoining the property in question.

Finally, the amended petition stated facts showing that in 1969 an agent of Suburban Tax Lien, the original tax purchaser, had made certain misrepresentations to counsel for the Howells to the effect that all taxes on the property in question had been paid. In fact, the Howells asserted that Suburban Tax Lien and its assigns allowed the Howells to pay all taxes from 1966 to the date of the petition and to remain in quiet possession for the express purpose of allowing the owners' rights to expire without the owners' knowledge of the issuance of a tax deed, and that, to further improve her legal position, Elsie Lhotka located a cooperating broker (Edelen) to act as a purported bona fide purchaser. It was argued that this misrepresentation constituted a fraudulent conceal-

---

[2] The affidavit of Frank Edelen stated that he bought the property for $10,000. At the hearing to set a supersedeas bond, Mr. Edelen admitted that he purchased the property "way under market" value and that he had a tentative offer for the 3½ acre parcel of $140,000 if rezoned from residential to multiple dwelling. However, the court concluded that the value of the property was approximately $45,000.

ment, thereby tolling the running of the two year limitation of subsection 3 of section 72.

The court found that the allegations of fraud in the petition were sufficient to warrant a denial of Elsie Lhotka's motion to strike and dismiss; however, the court sustained the motion to dismiss of the Edelens. In their motion, the Edelens contended that lack of jurisdiction did not affirmatively appear in the record of the tax deed proceedings; that the Edelens were not parties to the original action; that on October 22, 1970, Elsie Lhotka conveyed the subject premises to Elmhurst National Bank, as Trustee; that in 1972 the Edelens purchased the property for "valuable consideration without notice or knowledge of any claim" by the Howells to the property, receiving a trustee's deed dated December 4, 1972; that the section 72 petition of the Howells was filed after their purchase and makes no allegations of fraud on the part of the Edelens which would toll the running of the two year limitation set forth in subsection 3 of section 72. Therefore, the Edelens urged and the court found that they were protected by subsection 5 thereof, which provides:

> "Unless lack of jurisdiction affirmatively appears from the record proper, the vacation or modification of an order, judgment or decree pursuant to the provisions of this section does not affect the right, title or interest in or to any real or personal property of any person, not a party to the original action, acquired for value after the entry of the order, judgment or decree but before the filing of the petition, nor affect any right of any person not a party to the original action under any certificate of sale issued before the filing of the petition, pursuant to a sale based on the order, judgment or decree."

The Howells appeal from the order sustaining the Edelens' motion to dismiss the section 72 petition.

OPINION

■ We note first the general maxim that, for purposes of ruling on a motion to dismiss, all facts well pleaded are to be considered as true. *Logan v. Presbyterian-St. Luke's Hospital,* 92 Ill.App.2d 68, 235 N.E.2d 851; *Haney v. Haney,* 37 Ill.App.2d 216, 185 N.E.2d 409.

■■ Secondly, we note that although the language of subsection 5 of section 72 speaks only of the rights of purchasers for value, this section has been interpreted as intended to protect bona fide purchasers for value. (See, *e.g., People ex rel. Wright v. Doe,* 26 Ill.2d 446, 187 N.E.2d 222; *Southmoor Bank & Trust Co. v. Willis,* 15 Ill.2d 388, 155 N.E.2d

308.) Accordingly, the Joint Committee Comments regarding the subsection state:

> "This subsection is intended to protect a *bona fide purchaser* of property from the effects of an order setting aside a judgment or decree affecting the title to the property if he was not a party to the original proceeding, when lack of jurisdiction does not affirmatively appear from the record proper." (Emphasis added.)

We believe it apparent that in denying the motion to strike and dismiss of Elsie Lhotka while granting the motion to dismiss of the Edelens, the court found that sufficient allegations of fraud were made against Elsie Lhotka to toll the 2-year period of limitations contained in section 72(3) but that the Edelens were bona fide purchasers for value protected by section 72(5). Inasmuch as we find that petitioners have alleged sufficient facts to question the good faith of the Edelens, we feel it necessary to reverse on that issue witthout reaching the question of the deed's validity.

■■ A purchaser of land is not a bona fide purchaser if he has constructive notice of an outstanding title or right in another person. (*Smith v. Grubb*, 402 Ill. 451, 84 N.E.2d 421; 35 I.L.P. *Vendor & Purchaser* § 133.) A purchaser having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts he might have discovered by diligent inquiry. (*Carnes v. Whitfield*, 352 Ill. 384, 185 N.E. 819; 35 I.L.P. *Vendor & Purchaser* § 133.) A prospective purchaser is chargeable with knowledge of facts which are inconsistent with the claims of ownership by the record owner, for, as stated in *Burnex Oil Co. v. Floyd*, 106 Ill.App.2d 16, 24, 245 N.E.2d 539:

> "Whatever is sufficient to put a party upon inquiry is notice of all facts which pursuance of such inquiry would have revealed and without such inquiry no one can claim to be an innocent purchaser as against the party claiming an interest in the property supported by such notice."

Here, the Edelens' examination of the chain of title to the property showed the original tax deed to Elsie Lhotka in December 1969 and the writ of assistance placing her in possession. In October, 1970, she conveyed the property to Elmhurst National Bank, as Trustee,[3] which in

---

[3] The record does not indicate the identity of the beneficiary of the trust involved. We assume it to be Elsie Lhotka. In any event, even though a purchaser from a grantee who obtained title in good faith and for value without notice of prior equities will be protected against such equities, although he has notice thereof (*Eich v. Czervonko*, 330 Ill. 455, 161 N.E. 864, *cert. denied*, 278 U.S. 642, 73 L.Ed. 557, 49 S.Ct. 37), we do not believe such a sale would be effective here where the Howells have allegedly occupied the property since 1966, prior to Elsie Lhotka's transfer of title to the trust.

turn conveyed the property to the Edelens in December of 1972. The chain of title revealed no interest in the Howells or the Howell Airport. Nonetheless, the Howells' petition states that the property was improved by aircraft tie downs and taxiways and that aircraft were parked on the property. Further, the Howells alleged that the property was regularly used in the conduct of the business known as Howell Airport and that the Edelens lived across the street from the lot in question and were acquainted with the Howells and their use of the lot.

■■ We believe these allegations of fact were sufficient to establish a prima facie showing that the Edelens may not have been bona fide purchasers, inasmuch as they could be charged with notice of and a duty to make inquiry as to the Howells' interest in the property. Whatever is sufficient to put a party on inquiry is notice of all facts which pursuance of such inquiry would have revealed and without such inquiry no one can claim to be an innocent purchaser as against the party claiming an interest in the property supported by such notice. (*Ambrosius v. Katz*, 2 Ill.2d 173, 117 N.E.2d 69; *Bryant v. Lakeside Galleries, Inc.*, 402 Ill. 466, 84 N.E.2d 412; *Burnex Oil Co. v. Floyd.*) If, in the section 72 hearing, it is established that the Edelens are charged with notice of the Howells' claim, then they can stand in no better position than Elsie Lhotka and are subject to any relief the court may deem necessary against either of them.

In light of the above, this cause is reversed and remanded with instructions to deny the Edelens' motion to dismiss the section 72 petition and for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

BARRETT, P. J., and DRUCKER, J., concur.