593 N.E.2d 538 (1991)
228 Ill. App.3d 719
170 Ill.Dec. 649
In re Application of the COOK COUNTY COLLECTOR for Judgment and Sale Against Lands and Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1985 and Petition for Tax Deed of Leslie C. Barnard d/b/a Elsie Bee (Standard Bank and Trust Company as Trustee Under Trust Number 5812, Petitioner-Appellee,
v.
Leslie C. Barnard d/b/a Elsie Bee, Respondent-Appellant; Joseph Berke and American National Bank and Trust Company as Trustee Under Trust Number XXX-XXX-XX, Intervenors).
Nos. 1-89-2647, 1-89-2648.
Appellate Court of Illinois, First District, Third Division.
August 28, 1991.
Rehearing Denied May 8, 1992.
*541 Benitta Berke, Chicago, for respondent appellant Joseph Berke.
Herbert Lesser, Chicago, for petitioner-appellee.
Presiding Justice CERDA delivered the opinion of the court:
Respondent, Leslie C. Barnard, doing business as Elsie Bee, and intervenors, Joseph Berke and American National Bank and Trust Company as trustee under trust number XXX-XXX-XX, appeal from an order that vacated a tax deed in favor of the original owner of land trust property that had been sold for the nonpayment of real estate taxes.
On December 30, 1986, the property, which was located in Cook County and identified with the permanent index number XX-XX-XXX-XXX-XXXX, was sold for $774.80 by the Cook County Treasurer and Ex-Officio County Collector to respondent pursuant to an order of judgment and sale finding a failure to pay 1985 taxes. A "take notice" dated April 8, 1987, was given to Midwest Bank in Elmwood Park notifying it of the tax sale of the property to respondent. On August 30, 1988, respondent filed an extension of the time of redemption to February 15, 1989.
On September 28, 1988, respondent filed a petition for a tax deed. Two take notices filed September 28, 1988, were sent by certified mail to Heritage Standard Bank & Trust Company of Evergreen Park on September 29, 1988, by the clerk of the circuit court of Cook County. The notices stated that the property had been sold for delinquent taxes and that redemption could be made at any time on or before February 15, 1989. The bank received the notices on October 1, 1988. In addition, the bank was served with two notices on October 4, 1988.
On February 21, 1989, respondent applied for an order directing the county clerk to issue a tax deed. Respondent's supporting affidavit swore that: (1) affiant viewed the property between three and five months prior to the expiration of the time of redemption and found that the property was vacant and that no one occupied the property; (2) prior to the expiration of the time of redemption, affiant or another agent made a search of the appropriate records to determine parties interested in the property and found that those parties were Stanley T. Kusper, Heritage Standard Bank & Trust Company, and Heritage Standard Bank & Trust Company trust number 5812; (3) written notice was served upon all the interested persons by personal service followed by certified mailing of the notice; (4) a notice of the purchase at the tax sale was published on November 3, 4, and 7, 1988; and (5) notices were mailed within five months after the sale to the *542 party in whose name the taxes were last assessed.
On February 27, 1989, respondent testified at a hearing that he inspected the property several times during the notice serving period. There were about 38 acres of vacant land which had improvements consisting mainly of a water main. There were no driveways, and "it appear[ed] as if there was some farming on the property." He testified that to the best of his knowledge there were no occupants. In addition, respondent testified to the following:
"THE COURT: Any indication that someone was evidencing some interest in the property by usage, by structure, by whatever?
A. It appeared to me that there was someone doing some farming on the property but no one visible by way of any signs or any houses or buildings on the property.
THE COURT: Were you able to ascertain who that party may have been if indeed there was some farming?
A. No, I was not."
Respondent also testified, in answer to a question about what steps he took to determine who had an interest in the property, that he examined public records and that he ordered several documents. He also testified that the record owner of the property was Heritage Standard Bank as trustee under trust number 5812 and that Midwest Bank was the last assessee.
Respondent's attorney stated at the hearing that: (1) pursuant to sections 263 and 266 (of the Revenue Act) (Ill.Rev.Stat.1989, ch. 120, pars. 744, 747), take notices were served upon all the parties in interest; (2) notice was served on October 4, 1988, on the record owner, Heritage Standard Bank, and "those" were all the parties in interest; (3) the subsequent taxes due for the years 1986 and 1987 had been paid; and (4) the first installment of 1988 taxes had not been paid. Submitted into evidence were proofs from the county clerk's office of these subsequent tax payments. The proofs were dated February 27, 1989, and indicated that Gallagher & Henry ("G & H") had paid the taxes. The tax bill for the first installment of 1988 taxes was addressed to G & H at a Countryside, Illinois address.
The trial court at the February 27, 1989, hearing found that there had been due diligence in inquiring of the whereabouts of the parties entitled to notice under sections 241a, 263, and 266 of the Revenue Act (Ill.Rev.Stat.1989, ch. 120, pars. 722a, 744, 747). On February 28, 1989, an order was entered directing issuance of a tax deed to respondent. The trial court found that: (1) it had jurisdiction; (2) the tax sale notices were served in the manner and time required; (3) all persons entitled to notice had received due notice of the filing and the time of hearing of the petition; (4) the property had not been redeemed; and (5) the time for redemption expired on February 15, 1989.
On May 2, 1989, Heritage Standard Bank filed a petition pursuant to section 2-1401(f) of the Illinois Code of Civil Procedure (Ill.Rev.Stat.1989, ch. 110, par. 2-1401(f)) for a declaration that the order directing the issuance of a tax deed was void. Copies of the petition were mailed to respondent in care of its attorney and to the attorney.
Upon leave of court, a second petition to vacate was filed by new attorneys for Heritage Standard Bank and Trust Company on May 11, 1989, but no proof of service appears in the record.
Robert E. Gallagher swore in a supporting affidavit that he was the managing partner of Orchard Hill Building Company, which was the beneficiary of the land trust that owned the property. All notices would have come to him, and he first learned of the tax deed on April 18, 1989.
Respondent filed a special and limited appearance and a motion to strike the section 2-1401 petition for insufficiency of service of process. Respondent argued that his attorney received a notice of motion but was not authorized to accept process or notice on his behalf, that he was not properly served with notice of the petition, and *543 that the trial court lacked personal jurisdiction over him. The motion to strike was denied.
A temporary restraining order was entered that enjoined respondent from transferring or dealing with the property. Respondent moved to dissolve the temporary restraining order, but the order was reconfirmed and continued.
A third section 2-1401 petition was filed by Standard Bank & Trust Company, f/k/a Heritage Standard Bank and Trust ("the bank"), on May 23, 1989. Among its allegations were that: (1) the entire property was being extensively farmed; (2) the fact that the property was assessed as farmland was readily discoverable in the public records; (3) the tax buyer had the duty to exercise due diligence in discovering all pertinent facts; (4) the hearing was held only two years and two months from the date of the tax sale; (5) the trial court was not advised on February 27, 1989, that the redemption period was three years, that the property was assessed as farmland, and that the entire property was being extensively farmed; (6) the beneficiary of the land trust did not receive notice of the tax deed proceeding and therefore did not appear at the February 27, 1989, hearing; (7) even if the beneficiary had received notice, the notices were erroneous and void because they failed to properly set forth the correct redemption period; (8) an April 14, 1989, deed from respondent conveyed the property to American National Bank & Trust Company of Chicago as trustee under trust number 10805406; (9) an April 17, 1989, deed conveyed the property to the same bank into trust number XXX-XXX-XX; and (10) the order issuing a tax deed was void ab initio because the statute provided for a three year period of redemption and because the redemption period would not have expired until December 30, 1989.
The third petition was supported by another affidavit of Robert E. Gallagher who swore that: (1) he was the managing partner of Orchard Hill Building Company ("Orchard Hill"); (2) Orchard Hill was the beneficiary of land trust number 5812; and (3) he did not receive notice of the tax sale or of any expiration of a period of redemption.
On May 30, 1989, Joseph D. Berke, the sole beneficiary of American National Bank and Trust Company of Chicago land trust number XXX-XXX-XX, filed a petition to intervene. He alleged that on April 18, 1989, he paid $1.2 million in consideration for the property, that the property had been conveyed into the land trust by respondent, and that he was a bona fide purchaser for value within the meaning of section 2-1401(e) of the Illinois Code of Civil Procedure (Ill.Rev.Stat.1989, ch. 110, par. 2-1401(e)).
On May 30, 1989, respondent filed a motion to strike and dismiss the section 2-1401 petition. Respondent swore in a supporting affidavit that: (1) he inspected the property and informed the court of his inspection and the fact that the property "had evidence of farming on it"; (2) he was not aware that farmland had a three year period of redemption; (3) at the time of the February 27, 1989, hearing, he had not previously determined how the property was assessed or the assessed valuation, but believed that the property was in a residential zone; (4) after the tax deed was issued, he conveyed the property into a land trust with himself as sole beneficiary; (5) on or about April 18, 1989, he sold the property to Berke using a "like kind exchange"; and (6) Berke was not a party to the tax deed proceeding.
The intervenors also moved to dismiss the petition. Berke's supporting affidavit swore that he was "unaware of any of the circumstances surrounding [respondent's] acquisition of the property, other than he had obtained a tax deed" and "no facts * * * caused [him] to question any aspect of [either his] purchase" or respondent's acquisition of the property. Berke attached the documents that he swore were all those related to his purchase of the property: real estate sales contract, trust agreements, trustee's deed in trust, installment note, trust deed securing the installment note, and county and state real estate transfer declarations. No copy of the title commitment was attached.
*544 The motions to dismiss the petition were denied, and a preliminary injunction was entered against respondent and Berke enjoining them from dealing with the property.
Respondent filed an answer in which it stated that it had "no knowledge sufficient to form a belief as to the identity" of the trust's beneficiary.
At the trial, Thomas J. McGovern testified on behalf of the bank that he was the supervisor of the land division of the Cook County Assessor's Office and that he made an examination of the status of the property in the records of the assessor's office. According to an annual questionnaire completed by Robert E. Gallagher on March 15, 1988, for McGovern's office, the property was farmed by a tenant. McGovern had sworn in an affidavit that the questionnaire had been filed on or about March 24, 1988, and that the classification number on the assessor's property record information system indicated land under agricultural use. In the 1985, 1986, and 1987, questionnaires, George M. Eck was the applicant, but in the 1986 and 1988 questionnaires and in another 1987 questionnaire, G & H was the applicant. According to a copy of the office's microfiche for tax year 1985, the property was classified as agricultural.
Donald F. Yunker testified at the trial on behalf of the bank that he farmed approximately 200 acres of property located on Wolf Road from 145th to 153rd, and he grew corn, soy beans, and hay. He farmed all his life the property on the east side of Wolf Road from approximately 147th Street to about 150th Street, including 1985 through 1989, and he was well known in the area as the farmer of the property. George Eck owned this property prior to G & H.
Robert E. Gallagher testified at the trial on behalf of the bank that he was the managing partner of Orchard Hill, a wholly owned subsidiary of G & H. Orchard Hill owned 100% of the beneficial interest in Standard Bank land trust number 5812. The property was purchased on November 1, 1985. The company intended to farm the property for the next ten years, but eventually planned to build houses on it. The company paid the general real estate taxes on the property for the years 1986 and 1987 and the first installment of 1988 taxes.
Gallagher further testified that a letter dated October 3, 1988, from the bank to Orchard Hill enclosed a copy of the take notice and asked the company to take the appropriate action to protect its interest. But he denied receiving the October 3, 1988, notice that the property had been sold for delinquent taxes. Gallagher scanned all mail to Orchard Hill and he would pass it on to the appropriate person. It was possible, but not probable, that a letter addressed to Orchard Hill could have gone to other persons at the company besides Gallagher. Another letter, dated August 16, 1988, enclosed a notice of other property that had been sold for delinquent taxes.
Respondent testified at the trial on his own behalf that he started buying at tax sales in approximately 1973 for two years and then began again in 1982. He understood in 1988 that the period of redemption was two years. He served a take notice on the last known assessee of the property, the Midwest Bank, which was the only name available to him at the time. In a record search for owners and interested parties, he ordered a "Chicago Title and Trust computer run," he did "some tracking * * * in the judgment books," and he ordered documents. The computer run showed that on January 30, 1979, Rita Larson placed a deed in trust in the Heritage Standard Bank and Trust Company trust number 5812, which was shown to be the record owner of the property. (This court's examination of the document revealed that G & H's name appeared at the top.)
Respondent further testified that he viewed the property by himself. The large property was being farmed but was "vacant." There were also a couple of groves of trees but he saw no buildings. He looked for a farmer but he saw no one. There were buildings close to the property but he did not go there to try to find *545 someone who knew the farmer. His only attempt to determine who was in possession of the property was to see if anyone was there when he visited.
Respondent further testified that two notices were sent to the bank as a courtesy because he assumed that there might be a loan against the property. He did not put a three year redemption period in the notices because he did not know about it. According to the sheriff's returns, the bank was served with both notices on October 4, 1988.
Respondent further testified that he put nothing false in the application for an order directing the issuance of a tax deed and that he told the judge the truth at the February 27, 1989, hearing. He denied that there was any fraud committed in the trial court. At the time of the hearing, he did not know about a three year period of redemption and he checked whether subsequent taxes had been paid. Duplicate certificates of payment of taxes dated February 27, 1989, stated that the taxes for the years 1986 and 1987 were paid by G & H. He paid the first installment of the 1988 taxes. The "warrant book" and the "judgment book" showed that the assessee was G & H. Six or seven weeks after he obtained the tax deed, he sold the property to Berke in a tax-free like kind exchange so that he would not pay taxes until he sold the exchanged property.
Berke testified at the trial on his own behalf that he was a real estate broker and tax buyer. Berke relied upon the title commitment in purchasing the property. The purpose of the like kind exchange was to save respondent federal income taxes and did not benefit him.
After trial, the trial court made the following findings: (1) respondent negligently investigated the use of the property and inaccurately presented the evidence to the court issuing the tax deed order; (2) it was misled about the use of the property because the property was fully cultivated according to the farmer; (3) full disclosure of the use of the property at the hearing would have resulted in a denial of the tax deed; (4) respondent's failure to present the complete evidence of the use of the property and the failure to comply with the law requiring a three year redemption period for farmland was tantamount to fraud on the court; and (5) the tax deed was void.
Respondent first argues on appeal that the trial court erred in not striking the notice of motion because the section 2-1401 petition was improperly served on respondent's attorney instead of on the party as required by Supreme Court Rules 105 and 106. 134 Ill.2d R. 105, R. 106.
Respondent did file a special appearance, but any error in ruling against an objection to personal jurisdiction is waived by the specially appearing defendant's taking part in further proceedings in the case. (Ill.Rev.Stat.1989, ch. 110, par. 2-301(c).) After respondent's motion to strike was denied, he took part in further proceedings so that his objection to the service of process was waived. See Slade v. Bowman (1977), 49 Ill.App.3d 242, 246, 7 Ill.Dec. 631, 364 N.E.2d 922 (defects of service of petition to vacate were waived when defendant generally appeared to argue the motion).
Respondent also argues that the petition did not allege due diligence as required because: (1) the bank did not refute that it was served with notice of the tax sale; (2) the petition did not show that the failure to present any defense was not the bank's fault; and (3) the bank received notice approximately five months prior to the hearing.
Section 253 of the Revenue Act ("the Act") (Ill.Rev.Stat.1989, ch. 120, par. 734) provides that real property sold for delinquent taxes may be redeemed within two years of the date of sale, except that farmland sold in the period from November 15, 1985, to December 31, 1988, could be redeemed within three years. A purchaser must give, between three and five months prior to the expiration of the period of redemption, notice of the sale and the date of expiration of the period of redemption to the owners, occupants, and parties interested in the premises. (Ill.Rev.Stat.1989, ch. 120, par. 744.) The notice, a form of which is given in the statute, is to be served by *546 the sheriff upon owners who reside on any part of the property. (Ill.Rev.Stat.1989, ch. 120, par. 744.) If they can be found in the county upon diligent inquiry, other owners and parties interested in the property are to be served by personal service, or by leaving a copy at the usual place of abode of the person and mailing a copy by registered or certified mail. (Ill.Rev.Stat.1989, ch. 120, par. 744.) But where a party interested in the property is a trustee, "notice served upon the trustee shall be deemed to have been served upon any beneficiary." Ill.Rev.Stat.1989, ch. 120, par. 744.
The tax sale purchaser may file a petition within five months of the expiration of the time of redemption that prays for an order directing the county clerk to issue a tax deed in case the property is not redeemed. (Ill.Rev.Stat.1989, ch. 120, par. 744.) Section 266 of the Act further provides that notice of the filing of this petition, and the date on which the petitioner intends to make application for an order on the petition, is to be given to occupants, owners, and persons interested in the real estate in the same manner similarly as provided in section 263. (Ill.Rev.Stat.1989, ch. 120, par. 744.) But the purchaser may, in the alternative, insert in the notice, required by section 263, the fact of filing the petition for a tax deed and the date of the hearing. Ill.Rev.Stat.1989, ch. 120, par. 747.
Tax deeds are incontestable except by appeal and by a section 2-1401 petition, and section 266 of the Act is to be liberally construed so that tax deeds shall convey merchantable title. Ill.Rev.Stat.1989, ch. 120, par. 747.
Section 2-1401 of the Illinois Code of Civil Procedure provides relief from final orders and judgments after 30 days from their entry. (Ill.Rev.Stat.1989, ch. 110, par. 2-1401.) Due diligence must be demonstrated in presenting the defense or claim in the original action and in filing the petition. (Lazzara v. Dreyer Medical Clinic (1983), 120 Ill.App.3d 721, 724, 76 Ill.Dec. 304, 458 N.E.2d 958.) A section 2-1401 petition must be dismissed if the petitioner does not show that, through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court. In re Application of the County Treasurer of Cook County (1982), 92 Ill.2d 400, 409, 65 Ill.Dec. 905, 442 N.E.2d 216.
The first petition was withdrawn by the bank, and neither of the two subsequent petitions explained why no defense was presented in the tax deed proceedings by the bank. But the record contains the facts revealed at trial that the bank sent a letter to the beneficiary. As the land trust beneficiary has the right to manage the property and the trustee only owns the bare legal title (In re Application of the County Treasurer of Du Page County (1973), 16 Ill.App.3d 385, 390, 306 N.E.2d 743), the bank was diligent in responding to the notice of the tax deed proceedings because it notified the beneficiary who had the responsibilities to pay the property taxes and either to redeem the property or to contest the tax sale. The refusal to dismiss the petition will not be reversed on the basis of the petitioner's failure to allege the bank's diligence in the tax deed proceedings because ultimately facts were revealed that the bank acted diligently. The first section 2-1401 petition was filed by the bank on May 2, 1989, soon after discovery of the tax deed so that the bank also acted diligently in filing the petition to vacate.
The petition alleged that the beneficiary did not receive notice and that the managing partner of the beneficiary first learned of the tax deed on April 18, 1989, about six weeks after the issuance of the tax deed. Although a beneficiary is deemed to have received notice under the Act when notice was served upon the trustee (Ill.Rev.Stat.1989, ch. 120, par. 744), and a beneficiary is not entitled to notice (In re Application of the County Treasurer of Du Page County (1973), 16 Ill.App.3d 385, 390, 306 N.E.2d 743), non-receipt of the notice made excusable Orchard Hill's failure to appear in the tax proceedings.
Respondent also argues that the tax deed order was not void even if, arguendo, it provided an incorrect redemption period because: *547 (1) a tax deed order is void only where the trial court did not have jurisdiction and not where fraud was subsequently committed; and (2) jurisdiction in tax deed proceedings is in rem and is obtained when the county collector applies for judgment and order of sale. Vulcan Materials Co. v. Bee Construction (1983), 96 Ill.2d 159, 165, 70 Ill.Dec. 465, 449 N.E.2d 812.
A void order can be attacked at any time. (City of Chicago v. The Fair Employment Practices Commission (1976), 65 Ill.2d 108, 112, 2 Ill.Dec. 711, 357 N.E.2d 1154.) A void judgment is from its inception a complete nullity and without legal effect. (In re Marriage of Allcock (1982), 107 Ill.App.3d 150, 153, 62 Ill.Dec. 865, 437 N.E.2d 392.) An order is not void merely because of an error or impropriety, but is void because the court lacked jurisdiction (Vulcan, 96 Ill.2d at 161, 70 Ill.Dec. 465, 449 N.E.2d 812), because the court exceeded its authority (Dils v. City of Chicago (1978), 62 Ill.App.3d 474, 480, 19 Ill. Dec. 255, 378 N.E.2d 1130), or because the court lacked the inherent power to enter the order (People v. Holum (1988), 166 Ill.App.3d 658, 660-61, 117 Ill.Dec. 258, 520 N.E.2d 419). Only in the case of a clear usurpation of power by the court will a judgment be rendered void for want of jurisdiction. In re Marriage of Allcock, 107 Ill.App.3d at 153, 62 Ill.Dec. 865, 437 N.E.2d 392.
There is no question that the trial court here had subject matter jurisdiction over tax deed cases. In addition, the trial court obtained personal in rem jurisdiction over the property by the collector's filing of the application for a tax sale. (Urban v. Lois, Inc. (1963), 29 Ill.2d 542, 546, 194 N.E.2d 294.) A court lacks jurisdiction over property if the taxes had been paid or if the property was exempt from taxation (In re Application of Dickey (1978), 72 Ill.2d 317, 325, 21 Ill.Dec. 182, 381 N.E.2d 260 (order for sale of mineral interest was void because the interest was exempt from separate taxation); In re Application of County Collector (1977), 48 Ill.App.3d 572, 584, 6 Ill.Dec. 415, 362 N.E.2d 1335), but these were not the circumstances here. Although the farmer and the land trust beneficiary did not receive notice, the failure to give notice of the tax deed proceedings did not deprive the court of jurisdiction (Smith v. D.R.G., Inc. (1976), 63 Ill.2d 31, 35-6, 344 N.E.2d 468).
If the trial court had personal and subject matter jurisdiction, the tax deed order was void only if the trial court lacked the inherent power to enter it. Few cases have found orders void because of a lack of authority. E.g., In re Marriage of Fox (1989), 191 Ill.App.3d 514, 520-21, 138 Ill. Dec. 841, 548 N.E.2d 71 (an order modifying a prior child custody order was held void because only a petition for contempt in connection with visitation had been filed and because the petition did not invoke jurisdiction to make a child custody determination); Mortgage Syndicate, Inc. v. Do and Go Equipment, Inc. (1972), 7 Ill. App.3d 106, 110, 286 N.E.2d 520 (the court was held to have transcended its statutory jurisdiction because a decree of foreclosure did not provide the date of service on the owner of the equity of redemption); Oak Park National Bank v. Peoples Gas Light & Coke Co. (1964), 46 Ill.App.2d 385, 394-96, 197 N.E.2d 73 (a court was held to have exceeded its jurisdiction because it entered a judgment on the pleadings as a sanction contrary to a supreme court rule).
Even though the court exceeded its authority by erroneously entering a default judgment against a defendant who had answered the complaint, the judgment was held not void in Dils v. City of Chicago (1978), 62 Ill.App.3d 474, 480-81, 19 Ill.Dec. 255, 378 N.E.2d 1130. Where it was not beyond dispute that an order was in violation of the applicable statutory provisions, the order was held not void in People v. Holum (1988), 166 Ill.App.3d 658, 660-61, 117 Ill.Dec. 258, 520 N.E.2d 419. Although a tax deed order had not been entered by a court clerk as required, it was held not void in Landis v. Miles Homes, Inc. (1971), 1 Ill.App.3d 331, 335, 273 N.E.2d 153. An incorrect property description did not render a judgment for the issuance of a tax deed void in Elliott v. Johnson (1987), 156 Ill.App.3d 70, 74, 108 Ill.Dec. 652, 508 N.E.2d 1229.
*548 We hold that the tax deed order here was not void because the trial court had the power in general to order the issuance of tax deeds, because a tax deed was sought by the petitioner, and because the order was only erroneous in that it was entered prior to the period of redemption's expiration.
Relief from a tax deed order that is not void can only be obtained under a petition to vacate if the deed was procured by fraud. (Smith v. D.R.G., Inc. (1976), 63 Ill.2d 31, 36, 344 N.E.2d 468.) But a tax deed procured by fraud is a voidable order which can be vacated pursuant to a section 2-1401 petition. (Vulcan Materials Co. v. Bee Construction Co. (1983), 96 Ill.2d 159, 165, 70 Ill.Dec. 465, 449 N.E.2d 812.) A section 2-1401 petition cannot put in issue questions that were decided by the trial court in a tax deed proceeding unless there was fraud. (See Dahlke v. Hawthorne, Lane & Co. (1966), 36 Ill.2d 241, 244, 222 N.E.2d 465 (petition under predecessor section 72); contra Midwest Real Estate Investment Co. v. Talman (1st Dist. September 18, 1990, as corrected October 17, 1990), No. 1-89-0842, slip op. at 10 (although representation to court in tax deed proceeding may not have amounted to fraud, the failure to apprise the court of a subsequent mortgagee's interest was inexcusable under these facts, and the failure to comply with the service requirement could be collaterally attacked).) Fraud in this context is a "wrongful intentan act calculated to deceive." Dahlke, 36 Ill.2d at 245, 222 N.E.2d 465.
Respondent also argues that the bank failed to allege fraud in the section 2-1401 petition. But whether or not the petition sufficiently alleged fraud, the trial court correctly refused to dismiss the petition because it sufficiently alleged that the tax deed order was void, which is a ground for section 2-1401 relief because a void order can be attacked at any time (City of Chicago v. The Fair Employment Practices Commission (1976), 65 Ill.2d 108, 112, 2 Ill.Dec. 711, 357 N.E.2d 1154).
Respondent and the intervenors also argue that the trial court erred in finding fraud because: (1) respondent did not know about the three year redemption period for farmland; (2) the farmer did not testify to the extent of the farming on the property; and (3) respondent testified that there was a grove of trees on the property so that the property was not fully cultivated.
The farmer did not clearly testify whether the entire property was farmed, and there is no evidence that respondent intended to deceive the trial court about the extent of farming on the property. Respondent advised the trial court that there was some farming, and the farmer did not testify that the entire property was farmed.
But the record does raise the issue of fraud in connection with: (1) respondent's advising the trial court that he was not able to ascertain the identity of the farmer; and (2) respondent's failure to advise the trial court about G & H who was named in the proofs of real estate tax payments obtained by respondent to determine whether subsequent tax bills had been paid.
Respondent's negative answer to the trial court's question at the hearing whether he was able to ascertain the identity of the farmer was fraudulently misleading because the answer implied that respondent attempted to ascertain the identity. Respondent testified at trial that his only attempt to determine who was in possession of the property was to see if anyone was there when he visited. Respondent did not seriously attempt to find the farmer but merely noted the absence of anyone upon his visit.
In addition, the false representation that the bank was the only interested party was fraudulent. Despite the fact that the name of G & H appeared on the proofs of real estate tax payments, respondent, through his attorney, represented to the trial court that the only interested party was the bank and that all the parties in interest had been served with notice. Although the land trust beneficiary was not entitled to notice, it cannot be said with certainty that, if the trial court had known of the existence of G & H, the parent company of the land trust beneficiary, it would have nevertheless ordered the issuance of a tax deed to respondent. *549 Rather, the trial court might have required respondent to determine the whereabouts of G & H and to serve notice upon it because the beneficiary is an interested party and is permitted to redeem (In re Application of the County Treasurer of Du Page County (1973), 16 Ill.App.3d 385, 390, 306 N.E.2d 743).
The granting of section 2-1401 relief was proper on the basis of respondent's fraud in misleading the court that he attempted to ascertain the identity of the farmer and in representing that there were no interested parties other than the bank although the proofs of tax payments stated that G & H paid subsequent taxes. See In re Application of County Treasurer (1978), 67 Ill. App.3d 122, 131-32, 23 Ill.Dec. 822, 384 N.E.2d 729 (tax deed purchaser withheld enough information from the court to evidence a wrongful intent, and where a deed contains information to ascertain the truth concerning persons to be notified and the tax deed purchaser fails to notice it, there is sufficient evidence of bad faith to warrant concluding the deed was procured by fraud).
But, if Berke was a bona fide purchaser for value within the meaning of section 2-1401(e) (Ill.Rev.Stat.1989, ch. 110, par. 2-1401(e)), the trial court was without the power to vacate the tax deed order. Section 2-1401(e) provides that:
"[u]nless lack of jurisdiction affirmatively appears from the record proper, the vacation or modification of an order or judgment pursuant to the provisions of this Section does not affect the right, title or interest in or to any real or personal property of any person, not a party to the original action, acquired for value after the entry of the order or judgment but before the filing of the petition, nor affect any right of any person not a party to the original action under any certificate of sale issued before the filing of the petition, pursuant to a sale based on the order or judgment." Ill.Rev.Stat. 1989, ch. 110, par. 2-1401.
Section 2-1401(e) has been interpreted as intending to protect bona fide purchasers for value although the section only refers to purchasers for value. (In re Application of County Treasurer (1975), 30 Ill. App.3d 235, 239, 332 N.E.2d 557.) The Joint Committee comments of 1955 stated that the subsection was intended to protect a bona fide purchaser of property from the effects of an order setting aside a decree affecting the title if the purchaser was not a party to the original proceeding when lack of jurisdiction does not affirmatively appear from the record. Ill.Ann.Stat., ch. 110, par. 2-1401, Joint Committee Comments, at 603-04 (Smith-Hurd 1983).
A purchaser is not a bona fide purchaser if he had constructive notice of an outstanding title or right in another person. (County Treasurer, 30 Ill.App.3d at 240, 332 N.E.2d 557.) In addition, a purchaser having notice of facts that would put a prudent man on inquiry is chargeable with knowledge of other facts he might have discovered by diligent inquiry. (County Treasurer, 30 Ill.App.3d at 240, 332 N.E.2d 557; City of Chicago v. Cosmopolitan National Bank (1983), 120 Ill. App.3d 364, 368, 75 Ill.Dec. 843, 458 N.E.2d 11 (buyer of foreclosed property was not bona fide purchaser where, inter alia, the owner was in visible possession of the property).) If tax deed grantees had notice of the owners' claim to the property, then they stand in no better position than the tax purchaser and are subject to relief against them. County Treasurer, 30 Ill. App.3d at 241, 332 N.E.2d 557.
Section 2-1401(e) (Ill.Rev.Stat. 1989, ch. 110, par. 2-1401(e)) does not state whether the petitioner or the alleged bona fide purchaser has the burden of proof. In general, the burden of proof is on the petitioner to prove facts sufficient to justify relief (Brunswick v. Mandel (1974), 59 Ill.2d 502, 504-05, 322 N.E.2d 25), and section 2-1401(e) (Ill.Rev.Stat.1989, ch. 110, par. 2-1401(e)) provides that relief cannot affect a purchaser for value. But if the burden of proving that the alleged purchaser was not bona fide were on the petitioner, he would have to prove a negative fact. In at least one other jurisdiction, it has been held that the burden of proof is on the alleged bona fide purchaser. (State v. Garcia (1967), 77 N.M. 703, 711, 427 P.2d 230, 236 (in suit by State to set aside tax deeds, purchasers of tax deed from tax *550 deed petitioner had the burden of proving that they were bona fide purchasers)). We hold that an alleged bona fide purchaser who attempts to prevent the granting of section 2-1401 relief must prove that he was a bona fide purchaser.
At trial, Berke testified about the purchase price and the like kind exchange. He claimed that at the time the property was placed in trust for him, he did not know about the three year redemption period for farmland. In purchasing the property, he relied upon the title commitment (which was not filed with Berke's motion to dismiss that claimed to have attached all documents relating to the purchase). But Berke did not testify about his understanding of the ownership of the property, i.e., whether he viewed the property and saw evidence of farming or whether he saw G & H's name on the title commitment or on the proofs of tax payments. The only reference in the record to Berke's knowledge of the tax deed proceedings was in his affidavit that supported the motion to dismiss, and the affidavit merely stated Berke's conclusion that nothing caused him to question any aspect of respondent's purchase of the land and that he was unaware of any of the circumstances surrounding respondent's purchase other than he had obtained a tax deed.
Berke did not establish that he had no actual or constructive notice of the interests of the farmer or of the owner, and the extent of his knowledge and notice was not proven. Therefore, Berke did not prove that he was a purchaser for value within the meaning of section 2-1401(e) (Ill.Rev. Stat.1989, ch. 110, par. 2-1401(e)). The trial court properly vacated the tax deed.
Respondent also argues that the trial court erred in basing relief on equitable principles when the tax system is statutory. But it is the judgment, and not the reasoning, of the trial court that is to be reviewed. Material Service Corp. v. Department of Revenue (1983), 98 Ill.2d 382, 387, 75 Ill.Dec. 219, 457 N.E.2d 9.
Respondent also argues that the trial court erred in construing section 253 of the Act (Ill.Rev.Stat.1989, ch. 120, par. 734) as applying to the property at issue because a land developer who permits farming on vacant land in order to reduce real estate taxes is not entitled to a three year redemption period. But the statute provided for a three year redemption period for farmland and did not limit its application to farmland farmed personally by the owner. Therefore, the trial court did not err in applying a three year redemption period.
Respondent also argues that the trial court erred in providing injunctive relief in the form of a temporary restraining order and a preliminary injunction.
The granting of injunctive relief including a temporary restraining order is an interlocutory order that is appealable as of right. (134 Ill.2d R. 307(a)(1), (d)(1).) The appeal must be perfected within 30 days of the interlocutory order. (134 Ill.2d R. 307(a).) An order denying a motion to dissolve a temporary restraining order, when not appealed from, becomes a final order and becomes the law of the case. (Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc. (1983), 94 Ill.2d 535, 544, 69 Ill.Dec. 71, 447 N.E.2d 288.) A judgment is res judicata where an appeal has not been perfected, and an order from which an appeal might have been taken may not be reviewed on appeal from a subsequent order entered in the same case. (Baird & Warner, Inc. v. Gary-Wheaton Bank (1984), 122 Ill.App.3d 136, 138-39, 77 Ill.Dec. 536, 460 N.E.2d 840 (appeal pursuant to Supreme Court Rule 307(a)(4), 134 Ill.2d R. 307(a)(4)).) In general, the failure to timely appeal an order appealable under Supreme Court Rule 307(a) renders the judgment res judicata. (Wolfe v. Illini Federal Savings and Loan Association (1987), 158 Ill.App.3d 321, 324, 110 Ill.Dec. 651, 511 N.E.2d 828 (appeal under Supreme Court Rule 307(a)(2) from order appointing receiver)). Therefore, the entering of injunctive relief concerning the property in this case cannot be reviewed on appeal.
Respondent finally argues that the trial court erred in vacating the tax deed order without providing payment to it for all the taxes and other costs incurred. Petitioner does not argue that respondent is not entitled to reimbursement. Section 270 of the Act does provide that any order of *551 court setting aside any tax deed procured under the Act shall provide that the claimant shall pay to the party holding the tax deed: all taxes and legal costs with 18% annual interest, subsequent taxes and assessments incurred, the filing fee, the service fees, the amount paid to the county clerk for issuing the tax deed, $3 for each property for the service of notices served on occupants, owners or parties interested in the real estate, recording fee, and publication fees. (Ill.Rev.Stat.1989, ch. 120, par. 751.) The trial court is directed on remand to order payment to respondent pursuant to section 270.
The judgment of the trial court is affirmed, and the cause is remanded with directions.
AFFIRMED AND REMANDED WITH DIRECTIONS.
RIZZI and WHITE,[*] JJ., concur.
NOTES
[*] Justice White concurred with this opinion prior to his retirement.