(No. 21730.—
JOSIEDELL CARNES, Appellant, *vs.* JOSEPHINE WHITFIELD *et al.* Appellees.

*Opinion filed April 22, 1933.*

SAMUEL J. STEPHENS, for appellant.

DAVID J. PEFFERS, for appellee Josephine Whitfield; MIGHELL, GUNSUL, ALLEN & LATHAM, and EMIGH & COCKFIELD, for other appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Josiedell Carnes, complainant, filed a bill in the circuit court of Kendall county for partition of certain lands situated in that county. Josephine Whitfield, O. Harry Sheveland, trustee, Susan A. Shaw, the Millbrook Farmers Elevator Company, Pierce Thompson and Harry Ploger were made parties defendant. Mrs. Whitfield and Ploger did not answer and were defaulted. All other defendants filed a joint and several answer. The testimony was taken before the chancellor, who entered a decree adjudging that Mrs. Whitfield and Mrs. Carnes are each entitled to one-third of the described premises in fee simple, and that Thompson is entitled to the other third, subject to the right of redemption by Archibald J. Whitfield and his judgment creditors from a sheriff's sale of said one-third interest. From that decree this appeal is prosecuted by complainant.

George Whitfield was the owner of the farm in controversy at the time of his death, February 19, 1926. He left surviving him Josephine Whitfield, his widow, Josiedell Carnes, the complainant, and Archibald J. Whitfield, his children, as his only heirs-at-law. The widow did not

elect to take her dower rights, and by virtue of the statute she and the two children each became seized of an undivided one-third interest in the premises.

Archibald J. Whitfield at various times had been engaged in farming, manager of the Millbrook Farmers Elevator Company and president of the Farmers Bank at Millbrook. Becoming involved financially he withdrew from some of his activities, and in the spring of 1929 negotiated with Albert Stevens, of Sandwich, for the purchase of the Stevens coal, lumber and building material business. Stevens died on June 20. Shortly thereafter Whitfield purchased the business from Mrs. Belle Stevens, administratrix of her husband's estate, at the price of $11,000. He was compelled to sell his interest in the farm in order to obtain the purchase price of the new business. The farm lies one-half mile from Millbrook, a hamlet with a population of fifty. Its business houses consisted of a grocery store, a grain elevator and a bank. Whitfield testified that in April, 1929, he talked to complainant about selling her his interest in the farm, and that they agreed upon such a sale at $162.50 per acre, or approximately $14,000. The deed from Whitfield to complainant was drawn July 26, 1929, acknowledged July 30, and delivered to complainant shortly thereafter. Pursuant to the purchase agreement complainant paid Whitfield $3500 on July 6, 1929, $3000 on August 23, $4000 on January 7, 1930, and $1102.25 on April 12, 1930. The payments were all made by checks or drafts on the First National Bank of Aurora. The total amount of these checks, with certain sums due from Whitfield upon advancements for taxes and other items, completed the purchase price. Complainant did not record her deed until August 7, 1930. Meanwhile judgments by confession were entered against Whitfield in favor of the following named creditors: June 16, 1930, O. Harry Sheveland, trustee for himself, A. G. Larson and Pierce Thompson, for $3125; June 16, 1930, Susan A. Shaw for $1016, and June 25, 1930,

the Millbrook Farmers Elevator Company for $2237.01. The judgment in favor of Susan A. Shaw was held invalid and she has taken no appeal. That judgment will therefore be disregarded. The record does not show that when complainant received her deed she knew her brother was indebted to any person other than herself. An execution was issued on the elevator company's judgment on March 30, 1931, and levied on an undivided one-third interest in the farm as the property of Whitfield. On July 9, 1931, the sheriff sold that interest to Thompson for $5666.50 and delivered to him a certificate of purchase. After deducting the costs the sheriff paid the elevator company's judgment in full and applied the balance on the Sheveland judgment. On the day before the sheriff's sale complainant filed an affidavit in the recorder's office reciting the purchase of her brother's interest in the farm and setting out her claims. Prior to the sale she caused the affidavit to be read to Thompson and his attorneys.

Complainant contends that upon the purchase of her brother's interest in the land she went into the actual, open and notorious possession of the premises, and although her deed was not recorded until after the entry of the judgments above mentioned, all judgment creditors had both actual and constructive notice of her title and possession. Whitfield was living on the farm at the time he sold his interest to complainant. After the sale he continued to reside in the dwelling house, agreeing to pay $25 per month rent. He went back and forth each day to his business at Sandwich until he moved there on October 13, 1931. The tenant house on the farm was occupied by Ploger, who operated the farm. Whitfield and Ploger owned the livestock and grain in equal shares. Complainant leased the farm to Whitfield for the year 1930 and he sub-leased it to Ploger, but for the year 1931 Ploger leased the land direct from complainant. In February, 1930, the elevator company owed Whitfield $240 for rent, wheat and barley

raised on the farm in 1929. He was largely indebted to the company, and this amount was credited on his note. In September, 1930, the elevator company owed for the landlord's share of the grain delivered by Ploger as rent, $219.18. The elevator company made no claim of right to credit this sum on its note against Whitfield but paid the full amount to complainant.

Complainant engaged John Hattner and Fred G. Pope to build a cow barn, garage and about 240 rods of new fence. Hattner employed four men on the work and posted a sign on the gate at the road advertising that he was the contractor. Most of the work was done in June, 1930. All the materials and labor were paid for by Mrs. Carnes. She lived in Aurora and came to the farm about twice a week directing the work. Pope testified that he told J. D. Hollenbeck, president of the elevator company on June 2, that he was working for complainant and her mother, Mrs. Whitfield, and had told the same thing to others living in the vicinity. Hollenbeck denied the conversation.

Hollenbeck lived in Millbrook and at the time Whitfield is alleged to have made a deed to complainant was president of the elevator company and president of the Farmers State Bank of Millbrook. He testified that Whitfield was indebted to the bank as early as 1921 and from that time to 1929 was hard up; that the note had been juggled around but never reduced and gradually grew; that he knew Whitfield was indebted to the elevator company, Mrs. Shaw, Sheveland, the Plano Bank and B. B. Larson; that they did not make any great effort to collect the money due the elevator company because they supposed Whitfield would pay; that he owned land within one hundred yards of the Whitfield farm, traveled the road almost daily, and talked with Pope while the fence was being built.

Lemuel H. Britt lived about a mile east of the Whitfield farm. He testified he told B. B. Larson, treasurer of the elevator company in the fall of 1929, that Whitfield

had sold out and had bought a business at Sandwich, where he was going to move; that Larson asked Britt if he was positive, and he (Britt) said "Yes." Britt also testified that he heard about the sale more than once, and that it was discussed at the Millbrook store among the neighbors and around town. Larson was the father-in-law of both Sheveland and Thompson. Sheveland lived in Millbrook and Thompson lived on the Larson farm, adjoining the Whitfield farm. They all passed the Whitfield place frequently and knew the improvements were being made.

Whitfield testified that in the latter part of January, 1930, Larson came to his office at Sandwich to see him about his indebtedness to the elevator company; that he told Larson he had sold his interest in the farm to complainant in order to buy the Sandwich property and run the business; that it was arranged between him and Larson that his grain credit of $240 at the elevator should be applied on his note. The note on which the elevator company later took judgment shows such credit on February 1, 1930. Complainant testified that in August, 1929, she told Ploger, the tenant, she had bought her brother's share of the farm. Her mother corroborated that testimony. Whitfield testified he told Ploger the same thing. Ploger, however, fixed the time when he learned of the sale from members of the Whitfield family as the fall of 1930, and stated that the first knowledge he had of it was when he saw a newspaper item concerning the recording of the deed. Dora Budd, Thompson and Ploger each testified that complainant said her deed was not recorded because she did not care to have everyone know their business. She told Mrs. Budd she did not know it needed recording or she would have had it done.

While there is some conflict in the evidence it is undisputed that prior to February, 1930, Whitfield and Britt informed Larson of Whitfield's conveyance to Mrs. Carnes. Larson was dead at the time of the trial, but Whitfield was corroborated by the credit on his note above referred to,

and Britt was apparently a disinterested witness and there is nothing to discredit his testimony. Actual residence is not essential to continuous possession. If the owner is in actual possession and there are continuous acts of ownership there is sufficient notice to the world of his claim of title. (*Thomas* v. *Burnett*, 128 Ill. 37; *Mallett* v. *Kaehler*, 141 id. 70.) A purchaser is bound to inquire of the person in possession by what tenure he holds and what interest he claims in the premises. (*German-American Bank* v. *Martin*, 277 Ill. 629; *Williams* v. *Brown*, 14 id. 200.) It is well settled that whatever is sufficient to put a party upon inquiry is notice of all facts which pursuit of such inquiry would lead to, and without such inquiry no one can claim to be an innocent purchaser as against him. (*Mallett* v. *Kaehler, supra; Whitaker* v. *Miller*, 83 Ill. 381.) In the application of this rule this court has repeatedly held that where the first purchaser is in possession it constitutes sufficient notice and protects his rights as effectually as by recording his deed. (*Morrison* v. *Kelly*, 22 Ill. 609.) Possession of a tenant is constructive notice of the legal or equitable rights of the landlord under whom he holds and to whom he pays rent, even though the legal title stands in another's name. *Gallagher* v. *Northrup*, 215 Ill. 563; *Smith* v. *Heirs of Jackson*, 76 id. 254.

In *Smith* v. *Willard*, 174 Ill. 538, we held that where during the time a grantee held her deed from record an indebtedness was incurred on the strength of the record title, notice to a judgment creditor on the day of the sale under execution on a judgment for the debt did not affect his interest as purchaser. But in this case the debts were not incurred after the date of complainant's deed but were incurred before it. It cannot be said her failure to record the deed induced the judgment creditors to extend credit to her grantor or placed them in any worse position than they were before she purchased the land. It is not claimed there was any fraud in the transaction, and the evidence

conclusively shows the utmost good faith on her part. With the money derived from the purchase Whitfield openly purchased another business in an adjoining town for $11,000, of which amount he paid $8000 and secured the balance by a mortgage to the seller. He borrowed $1000 from Mrs. Carnes and in addition owed her and her mother $1000 back rent. To secure this he conveyed the Sandwich business to complainant subject to the mortgage to Mrs. Stevens, but not until after the judgments were entered. The president of the elevator company knew Whitfield was largely indebted and hard up since 1921. Larson, the treasurer, and father-in-law of Sheveland and Thompson, was told of complainant's purchase on two occasions. All of them knew that complainant was making valuable improvements on the farm and that Whitfield had purchased and was operating the Sandwich business, still no effort was made to collect from him or levy on the farm until almost a year after complainant purchased his interest in it.

Under all the circumstances shown in the record the equity of this case clearly appears to be with complainant, and the finding of the chancellor that the elevator company had neither actual nor constructive notice of the conveyance to complainant when it obtained its judgment is against the manifest weight of the evidence. The testimony shows that the elevator company did have actual notice of her purchase before it took its judgment and that Thompson had actual notice prior to the sheriff's sale. The open and notorious acts of ownership by complainant, and other evidence of the transfer of title to her before any of the judgments were entered, were sufficient to constitute notice to the world of her rights in the premises.

The decree of the circuit court is reversed and the cause is remanded, with directions to the chancellor to enter a decree for partition in conformity with the prayer of the bill.

*Reversed and remanded, with directions.*