Burnex Oil Co., a Corporation, Plaintiff-Appellant, v. Dale Floyd, Marvin Homeyer, and Mobil Oil Company, a Corporation, Defendants-Appellees.

Gen. No. 52,848.

First District.

February 10, 1969.

James B. McKeon, of Chicago, for appellant.

McDermott, Will & Emery, of Chicago (Hamilton Smith and Frank J. Uvena, of counsel), for appellees.

**STOUDER, J.**

Plaintiff Appellant, Burnex Oil Company, a Corporation, commenced this action in the Circuit Court of Cook County seeking damages against Dale Floyd, Marvin Homeyer and Mobil Oil Company, a Corporation, Defendants-Appellees. The fourth amended complaint which is the subject of this appeal, consists of two counts, the first based on conversion and the second based on loss of profits from wrongful eviction of plaintiff. Each of the parties filed motions for summary judgment with respect to each of the two counts of the amended complaint. The trial court denied both plaintiff's and defendants' motions for summary judgment with respect to count one (conversion) and directed that the cause proceed on the limited issue of whether the defendants had negligently removed the personal property of plaintiff located on the premises. Defendants' motion for summary judgment on count two (wrongful eviction) was granted and judgment entered against plaintiff. It is from these actions of the trial court that plaintiff appeals.

From the pleadings and documents filed in support of the motions for summary judgment, the facts may be summarized as follows. Burnex Oil Company is an independent distributor of Phillips Petroleum products. In 1960, O'Hare Garage purchased the premises at 9230 Belmont Avenue, Franklin Park, Illinois, for the purpose of storing and transferring cars to and from O'Hare Field. The premises were improved with a factory type building. In order to supply gasoline and oil to the cars transferred and stored, O'Hare Garage entered into a lease with Burnex Oil leasing the 9230 Belmont premises to Burnex for a period of ten years. The lease provided that Burnex would install tanks, pumps, lights, etc. and would pay O'Hare Garage one cent on each gallon of gasoline pumped on the premises. On the same date a sublease was entered into between the same parties in which Burnex leased the same premises back to O'Hare Garage.

18

Thereafter at its expense, Burnex installed two, three-thousand gallon underground tanks, two pumps, signs and signposts together with an air compressor and hydraulic hoist on the premises. O'Hare Garage as sublessee and operator of the filling station premises, purchased gasoline and other supplies from Burnex until April, 1962. During this period Burnex made monthly payments to O'Hare Garage of the amount required by the lease. In April, 1962, O'Hare Garage discontinued its operations on the premises and terminated its sublease with Burnex. During the summer of 1962, O'Hare notified Burnex that it was intending to sell the premises to Dale Floyd and Marvin Homeyer, two of the defendants herein. The defendants did, in fact, purchase the premises by contract executed in August, 1962, and by deed executed and delivered in September, 1962. In October, 1962, a discussion took place concerning the purchase of gasoline by defendants from plaintiff at which time the plaintiff advised the defendants that the lower price (commercial wholesale price) which the defendants wanted to pay was the price applicable where the purchaser owned the equipment but that a higher price was payable where the company owned the equipment as did plaintiff. Thereafter, defendants operated the filling station in conjunction with other activities on the premises, purchasing gasoline at the higher price, from plaintiff until April, 1964. At that time defendants notified plaintiff that they intended to deal with the Mobil Oil Company and requested plaintiff to remove its tanks and other equipment. Plaintiff refused so to do relying upon its lease and also notified Mobil of its position. Although a representative of Mobil indicated nothing would be done, the tanks and other equipment were nevertheless removed in accord with directions from defendants Floyd, Homeyer and Mobil Oil. This action resulted as a consequence thereof.

The principal question raised on this appeal is whether plaintiff as lessee is entitled to enforce the provisions

of its lease against a purchaser of the premises from the lessor.

The first question which we shall consider is the argument of defendants urged in support of the trial court's decision that plaintiff had no enforceable rights under its lease. According to defendants, the sublease from plaintiff to O'Hare was not a sublease but an assignment, and as a consequence thereof, any interest of the lessee in the premises is extinguished. According to defendants, this consequence should follow even though all documents were recorded and would be equally applicable whether the transfer of the lease was to a third party or to the owner of the premises. Defendants rely on Sexton v. Chicago Storage Co., 129 Ill 318, 21 NE 920, Taylor v. Marshall, 255 Ill 545, 99 NE 638, Lyon v. Moore, 259 Ill 23, 102 NE 179 and Glanz v. Halperin, 251 Ill App 572. Such cases do not however, in our opinion, support the contention of defendants.

■ As we understand the argument of defendants and the cases upon which they rely, a transfer by a lessee of the entire term of the lease results in a transfer of the leasehold estate to the transferee, thereby creating privity of estate between the lessor and transferee although privity of contract remains between the lessee and his transferee. Although plaintiff argues that the transfer in the instant case did not constitute an assignment because the entire term of the lease was not transferred (the principal lease provided for extensions while the sublease did not), we believe such issue is immaterial. The doctrine which defendants seek to apply is based on the transfer of the leasehold estate. However, it is undisputed that the transfer agreement (sublease) was terminated by mutual agreement many months prior to the purchase of the premises by the defendants and such termination extinguished any leasehold interest which may have originally been transferred revesting the lessee therewith. It can hardly be said that after voluntary

20

termination of the transfer agreement the transferee had any interest or obligation under the agreement.

Although what we have heretofore said disposes of the issue, we likewise have serious doubt that the doctrine is applicable where the terms of the principal lease require that the lessee make substantial improvements in order to carry out the purpose of the lease, such improvements are in fact made, and the transfer agreement does not contemplate transfer of the improvements so made. Although it is not possible from the record to ascertain whether the trial court agreed with such contention we find it is without merit and offers no support for the action of the trial court.

This brings us to what we consider to be the principal issue of this case. As against the claim of plaintiff to a leasehold interest in the premises do the defendants, Floyd and Homeyer, have the status of innocent purchasers of such premises, thereby entitling them to ownership of the premises unencumbered by any interest of plaintiff?

The parties agree on the general rule that a bona fide purchaser of real property from the record owner acquires good title thereto free and clear of any interest therein except such interest of which he has notice. It is admitted that the defendants purchased the premises from the record owner (plaintiff's lease was not recorded), and hence the principal question is whether defendants had or are chargeable with notice of plaintiff's interest. Such notice may be actual or constructive and contemplates the existence of circumstances or facts either known to a prospective purchaser or of which he is chargeable with knowledge which imposes upon such purchaser the duty of inquiry. Where real estate is in the possession of someone other than the record owner, such possession is generally regarded as notice to the world of the interest represented thereby and is legally equivalent to the recording of such interest. Carnes v. Whit-

field, 352 Ill 384, 185 NE 819, and Slinger v. Sterrett, 283 Ill 82, 118 NE 1008. A purchaser is bound to inquire of the person in possession by what tenure he holds and what interest he claims in the premises. Carnes v. Whitfield, supra. Possession having the same effect as recording, charges a prospective purchaser with notice of all legal and equitable claims of the occupant. Ambrosious v. Katz, 2 Ill2d 173, 117 NE2d 69. Because possession has such substantial significance and consequences it follows that the possession or evidence of continuing acts of ownership thereof must be visible, open, exclusive and unambiguous. Atwood v. Chicago, M. & St. P. Ry. Co., 313 Ill 59, 144 NE 351.

Defendants in support of the trial court's action assert plaintiff was not in possession of the premises, relying principally on the cases of Roderick v. McMeekin, 204 Ill 625, 68 NE 473, and Miliken Trust Co. v. Gregory, 292 Ill App 28, 10 NE2d 853, and hence they were under no duty of inquiry. Furthermore, defendants insist that the undisputed facts are that they purchased the property from the record owner (O'Hare Garage) with no knowledge of plaintiff's lease and in reliance upon the owner's representations in the contract and deed that there were no leases.

In the Roderick and Miliken Trust Company cases as in most of the cases in which the issue has been involved, the issue presented was whether the possession exercised by a party claiming under an unrecorded interest was sufficient to charge the purchaser thereof with notice when such purchaser was unaware of such possession. In the instant case, the defendants rely heavily upon the absence of persons either as subtenants or as agents of plaintiff on the premises in support of their conclusion that plaintiff was not in possession. Although the continuous occupation of the premises by a third party is not necessarily required to establish possession (see Thomas v. Burnett, 128 Ill 37, 21 NE 352), we would be disposed

to hold if that were the only issue, that the mere presence of a vacant building on real estate bearing the brand name of a product sold, would not be sufficient possession to charge a prospective purchaser with notice thereof. However, plaintiff asserts (which assertion is completely ignored by defendants), that not only was their property visibly on the premises but defendants knew that such property was not owned by their seller.

We agree with plaintiff's contention that its rights do not depend solely upon the visible presence of its property on the premises. It is undisputed that although plaintiff did not talk with defendants prior to their purchase of the property, shortly after defendants did take possession of the property, plaintiff's representative discussed the purchase of gasoline by defendants from plaintiff. On this occasion the defendants acknowledged the plaintiff's ownership of the property located on the premises which they had purchased. The affidavits of defendants alleged that they relied upon the representations of O'Hare (general representations in contract and warranties of deed) that there were no leases. However, the affidavits do not allege that O'Hare was the owner of the filling station equipment, that O'Hare represented that they owned such equipment, that the defendants believed O'Hare owned such property, that the defendants purchased such property from O'Hare or that the defendants were unaware that O'Hare did not own such property. The only fair inference which may be drawn from such circumstances is that defendants knew plaintiff's property, rightfully on the premises, did not belong to the record owner, and as a consequence we believe defendants had knowledge of facts which imposed upon them the duty of inquiry.

██ The rationale of cases involving notice by possession is that the prospective purchaser is chargeable with knowledge of facts which are inconsistent with the claims of ownership by the record owner. Where a prospective purchaser has actual knowledge of facts which

23

are inconsistent with the claims of the record owner, the prospective purchaser is not at liberty to ignore such facts. Whatever is sufficient to put a party upon inquiry is notice of all facts which pursuance of such inquiry would have revealed and without such inquiry no one can claim to be an innocent purchaser as against the party claiming an interest in the property supported by such notice. Ambrosious v. Katz, 2 Ill2d 173, 117 NE2d 69, and Bryant v. Lakeside Galleries, Inc., 402 Ill 466, 84 NE2d 412. We hold, therefore, that the defendants acquired the premises subject to the leasehold interest of plaintiff.

For the foregoing reasons the judgments of the Circuit Court of Cook County are reversed and remanded with directions that the Court proceed in accord with the views expressed herein.

Judgments reversed and remanded with directions.

ALLOY and CULBERTSON, JJ., concur.