BANCO POPULAR, as Successor Trustee to Pioneer Bank, as Trustee, *et al.*, Plaintiffs and Counterdefendants-Appellees, v. BENEFICIAL SYSTEMS, INC., *et al.*, Defendants (Beneficial Systems, Inc., Counterplaintiff-Appellant; Banco Popular, as Successor Mortgagee to Pioneer Bank, Third-Party Defendant-Appellee).

First District (1st Division) No. 1—01—0247

Opinion filed November 4, 2002.

Richard L. Hirsh, of Richard L. Hirsh & Associates, P.C., of Hinsdale, for appellant.

Canel, Davis & King, of Chicago (William H. Jones, of counsel), for appellee Banco Popular.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Counterplaintiff-appellant Beneficial Systems, Inc. (BSI), appeals from the trial court's order denying its motion for summary judgment and granting summary judgment in favor of counterdefendants-appellees Banco Popular as successor trustee (BPT) and Marsha Azar (Marsha), and third-party defendant-appellee Banco Popular as successor mortgagee (BPM). BSI asserts that the trial court erred in its

decision in several respects, including that Marsha's failure to respond to BSI's request to admit facts resulted in judicial admissions that prevented her, as well as BPT and BPM, from presenting evidence during the summary judgment hearing; that these facts were sufficient to entitle BSI to summary judgment; and that even if it was proper for the court to consider other allegations, these raised genuine issues of material fact that precluded summary judgment. BSI asks that we reverse the grant of summary judgment in favor of Marsha, BPT and BPM and enter summary judgment in its favor or, alternatively, vacate the judgments entered and remand for trial. Because we find issues of fact as to whether there was actual and constructive knowledge on the part of BSI of Marsha's, BPT's and BPM's interests in the property and because we find issues of fact as to the propriety of the levy and sale, we reverse the grant of summary judgment and remand.

## BACKGROUND

George and Helena Kaltezas (the Kaltezases) owned property located at 1767-75 West Greenleaf in Chicago, Illinois, that contained a building on the premises. By 1994, the property had fallen into disrepair. The City of Chicago instituted a building code violation case against the Kaltezases, resulting in the filing of a *lis pendens* notice with the recorder's office in 1995.

The Kaltezases hired Morris Reynolds (Reynolds) to do work on the property. Eventually, Reynolds filed a complaint against the Kaltezases alleging breach of contract and seeking to place a lien on the property. On January 17, 1996, judgment was entered for Reynolds against the Kaltezases. This judgment was recorded with the Cook County recorder of deeds on May 3, 1996.

However, several months before the judgment, on March 30, 1995, the Kaltezases executed a quitclaim deed conveying all interest in the property to Marsha, through her nominee Saul Azar (Saul). The deed, which was delivered on May 13, 1995, stated that Marsha had "the right of equitable ownership in the property and building even if it is not recorded by way of deed conveying and vesting such legal ownership." Saul and Marsha paid all taxes to redeem the property as well as the water bill and brokers' commissions, placed a sign in the building's window that their company, Westridge Realty and Construction Co., was managing the property, changed the name of the tax addressee to Westridge, repaired the building, dealt with the local police department and alderman's office in rehabilitating the property, and leased the property to new tenants. Saul told Theodore Zimmerman, Reynolds' attorney, that he had purchased the property from the Kalte-

zases. Saul also appeared in open court to defend the building code case instituted by the City of Chicago. He filed a written appearance, stating that he was the owner of the property. Eventually, that case was dismissed when Saul and Marsha completed all necessary repairs on the property. Neither Saul nor Marsha, however, recorded the deed given to them from the Kaltezases.

After judgment was awarded to Reynolds against the Kaltezases, Reynolds assigned it to BSI on June 1, 1996. BSI's president, Dexter McClure (McClure), searched the records of the recorder's office, and although he found the *lis pendens* notice regarding the building code violation case on the property, he did not review the court file or inspect the property itself.

On August 6, 1996, Marsha finally recorded her deed from the Kaltezases. In conjunction with this, Marsha recorded a deed in trust on the property as well as a mortgage in favor of Pioneer Bank, the predecessor trustee to BPT and predecessor mortgagee to BPM.

BSI delivered the judgment it received from Reynolds to the Cook County sheriff for levy and sale. BSI initially did so on August 16, 1996; the process was conducted in mid-June 1997, against the "right, title and interest of the Defendants George Kaltezas and Helena Kaltezas." On June 18, 1997, the property was sold, after notice by publication, to BSI as the successful bidder. BSI thereafter notified Marsha and BPT that the sale had occurred, what amount was bid and the date of redemption. The sale was later confirmed by the court, which ordered the sheriff to deliver the deed to BSI.

Marsha and BPT filed suit against BSI to set aside the sheriff's deed. BSI filed a countersuit to quiet title and establish its priority over BPM's mortgage. BPM, in turn, brought suit against BSI.

During this litigation, BSI submitted a "Request to Admit Facts and Genuiness of Documents" (request to admit) to Marsha, BPT and BPM. Specifically, requests number 11 and number 13 dealt with the issue of BSI's notice of Marsha's interest in the property:

"11. That at no time prior to June 1, 1996, was there any public record or notice of the interest of Marsha Azar or [BPT] in the subject property.
  ***

13. That at no time prior to June 1, 1996, neither [BSI], its shareholders, officers, agents nor its attorneys had any actual or constructive knowledge of the interest of Marsha Azar and/or [BPT] in the property ***."

Both BPT and BPM timely filed their objections and responses to this request. Marsha, however, never replied to this request.

BSI moved for summary judgment, asserting that because judg-

ment on the lien was entered before Marsha recorded her deed, its interest in the property superseded hers, BPT's and BPM's. BSI also claimed that Marsha's failure to respond to its request to admit resulted in judicial admissions that BSI did not have actual or constructive knowledge of her interest in the property when it received the lien. Marsha, BPT and BPM also moved for summary judgment, arguing that because the Kaltezases no longer had an interest in the property once the deed was delivered to Marsha on May 13, 1995, Reynolds' lien against the Kaltezases entered in 1996 and later assigned to BSI was a nullity that in no way affects Marsha's title in the property.

The trial court denied BSI's motion and granted Marsha's, BPT's and BPM's motion for summary judgment in their favor. The court concluded that the main issue was whether the Reynolds judgment attached to the Kaltezases' interest. The court found that it did not. Moreover, it concluded that even if Marsha's failure to reply to the request to admit did play a role, the request contained legal conclusions, not factual issues. Therefore, the court held that BPT's title and BPM's mortgage on the property were unaffected by BSI's claims and that BSI had no interest in the property. Accordingly, the court declared the levy proceedings and sheriff's deed null and void. BSI filed a motion for reconsideration. This was denied.

BSI now appeals, presenting several arguments for our review. BSI contends that the trial court erred in finding that the judgment lien, obtained before Marsha recorded her deed, did not attach to the property. Moreover, BSI argues that the court erred in not binding Marsha, BPT and BPM to Marsha's "admission," resulting from her failure to respond to BSI's request to admit, that BSI lacked actual and constructive notice of her interest in the property. BSI insists that because of this admission, the court was required to disregard any contrary testimony regarding notice, thereby resulting in summary judgment in favor of BSI. Alternatively, BSI argues that if it was proper for the court to consider the issue of notice, then this constituted a genuine issue of material fact precluding summary judgment and this cause must be remanded. On their part, Marsha, BPT and BPM[1] contend on review that the trial court's grant of summary judgment in their favor was proper because, since the Kaltezases sold the property prior to the entry of judgment lien, the judgment lien did not attach to the property and the levy and sale to BSI were void. In the alternative, they argue that BSI had actual and constructive

---

[1]We note for the record that Marsha and BPT have adopted the brief and arguments of BPM on appeal.

knowledge of Marsha's, BPT's and BPM's interests in the property; that because BSI did not notify them of the levy and sale, those could not be legally effective; and that Marsha's failure to respond to BSI's request to admit is immaterial.

In disposing of this cause, we first address whether, based on the circumstances presented, the judgment lien attached to the property. Second, we examine the consequences of Marsha's failure to respond to BSI's request to admit and this failure's effect on BPT and BPM. Finally, we analyze the propriety and validity of the ultimate levy and sale of the property.

## ANALYSIS

■ "The purpose of summary judgment is to determine whether a question of fact exists ***." *West v. Northeastern Illinois R.R. Corp.*, 180 Ill. App. 3d 307, 311 (1989); see also *Addison v. Whittenberg*, 124 Ill. 2d 287, 294 (1988). In the instant case, summary judgment would have been proper only if the pleadings, depositions and admissions on record, together with any affidavits, had shown that there was no genuine issue as to any material fact and that Marsha, BPT and BPM, as the moving parties, were entitled to judgment as a matter of law. See 735 ILCS 5/2—1005(c) (West 1996); *Purtill v. Hess*, 111 Ill. 2d 229, 240-44 (1986); see also *McBride v. Commercial Bank of Champaign*, 101 Ill. App. 3d 760, 764 (1981) (right to this relief must have been "clear and free from doubt"). Our review of the court's order granting summary judgment is *de novo*. See *Anderson v. Alberto-Culver USA, Inc.*, 317 Ill. App. 3d 1104, 1110 (2000). If we find that a genuine issue of material fact exists in this cause, summary judgment cannot stand. See *West*, 180 Ill. App. 3d at 312.

### A. The Judgment Lien

The first issue we address on appeal involves the priority of a judgment lien creditor over a prior purchaser who failed to record his deed. Primarily, we are asked to resolve the question of whether the judgment lien, which was obtained and registered after the Kaltezases conveyed the property to Marsha but before Marsha recorded her deed, attached to the property thereby giving Reynolds (and BSI) an interest superior to that of Marsha (and BPT and BPM). BSI argues that pursuant section 30 of the Conveyances Act (Act) (765 ILCS 5/30 (West 1998)), Reynolds was a creditor without notice of Marsha's interest in the property and Marsha's deed became effective as to Reynolds only after she recorded it; therefore, Marsha, BPT and BPM took their interest subject to the judgment lien. BSI asserts that the issue of what interest the lien attached to must ultimately be governed by the issue of notice, an issue which presents genuine questions of

material fact. Marsha, BPT and BPM, however, argue that the judgment lien never attached to the property because the Kaltezases did not own the property at the time Reynolds received the judgment lien on it; since the Kaltezases had already sold the property to Marsha, there was nothing upon which to impose a lien. Marsha, BPT and BPM further contend that, as a matter of law, section 30 of the Act does not apply here because Reynolds was not a creditor at the time the Kaltezases and Marsha executed the deed, and the fact that Reynolds recorded his lien before Marsha recorded her deed is "immaterial" because Reynolds, even if he were a creditor, could not have greater rights in the property at that time than the Kaltezases, as debtors. We agree with BSI and conclude that summary judgment was improper.

■ The general rule, as outlined by our supreme court in *East St. Louis Lumber Co. v. Schnipper*, 310 Ill. 150 (1923), is that a judgment lien extends only to the actual interest a judgment debtor has in the property at the time the judgment lien is issued. See *East St. Louis*, 310 Ill. at 156. Thus, if the judgment debtor has no interest in the property at that time, the lien cannot attach. See *East St. Louis*, 310 Ill. at 156 (creditor's lien cannot attach "to a mere naked legal estate when the entire equitable estate is vested in some third person"). However, our supreme court also noted in *East St. Louis* that exceptions to this general rule exist which grant priority to a judgment creditor over the actual owner of property. See *East St. Louis*, 310 Ill. at 157. One such exception, as cited by our supreme court, is embodied in section 30 of the Act. See *East St. Louis*, 310 Ill. at 157. Section 30 states:

> "All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." 765 ILCS 5/30 (West 1998).

Under this section, then, a judgment creditor is given priority over the holder of an unrecorded conveyance if the creditor is without notice of the holder's interest. See *East St. Louis*, 310 Ill. at 157.

These principles were again affirmed by our supreme court in *Echols v. Olsen*, 63 Ill. 2d 270, 276 (1976). There, the court stated that a judgment creditor who records his judgment lien "acquires rights superior to those" of one who failed to record an interest obtained before the creditor received the judgment lien. *Echols*, 63 Ill. 2d at 276. As a result, then, this preference, which comes by virtue of sec-

tion 30 only, allows the creditor to "prevail over the holder of a prior but unrecorded interest." *Echols*, 63 Ill. 2d at 276, referring to *East St. Louis*, 310 Ill. at 156. See also *Massey v. Westcott*, 40 Ill. 160, 163 (1866) ("it is the settled law" of Illinois that a "lien attaches to whatever interest in real estate the records disclose in the judgment debtor, in the absence of" notice); *Bauman v. Schoaff*, 331 Ill. App. 38, 43-44 (1947) (pursuant to section 30 of Act, "a judgment becomes a lien on all real estate of the judgment debtor appearing of record free from the claims of all other persons of which the judgment creditor had no notice, either actual or constructive"); *Commercial Trust & Savings Bank of Springfield, Illinois v. Murray*, 246 Ill. App. 355, 359 (1927) (creditor's "lien will not be affected by the subsequent recording" of deed of prior holder in interest if creditor had no notice of the unrecorded deed).

■ In the instant case, it is undisputed that the Kaltezases executed a deed to the property to Marsha in March 1995 and delivered it in May 1995. The record also indicates that judgment on the lien petition was entered for Reynolds in January 1996 and was recorded in May 1996. It was not until August 1996 that Marsha finally recorded her deed. Thus, while Marsha was the holder of an interest prior to that of Reynolds, that interest was not recorded at the time Reynolds' judgment was entered and recorded—all parties agree that the Kaltezases appeared of record as the owners of the property in 1996 when the lien was entered and recorded. Under the general rule of liens and conveyances as noted above, Reynolds' lien would have been limited to the Kaltezases' interest in the property at the time of the lien in 1996—which, due to the 1995 deed to Marsha, was none. However, the circumstances present here fit those outlined in section 30 of the Act and may well qualify Reynolds for the exception to the general rule. Marsha is the holder of a prior unrecorded interest, and Reynolds is a judgment creditor who, though he obtained his lien after Marsha received her interest, recorded his interest before she recorded hers. The ultimate question left to be answered, then, is whether Reynolds had other notice of Marsha's interest notwithstanding her failure to record her deed before Reynolds recorded his lien. See *Miller v. Bullington*, 381 Ill. 238, 243 (1942); *Beals v. Cryer*, 99 Ill. App. 3d 842, 844 (1981) (possession of property, acts of dominion and/or improvements may be sufficient notice of interest in property to others notwithstanding failure to record deed). If he did not, he is a creditor "without notice" under section 30 and, under that statute, acquired rights superior to those of Marsha at the time he recorded his lien. See *Echols*, 63 Ill. 2d at 276.

The transcript of the hearing on the cross-motions for summary

judgment in the instant case reveals that the parties argued at length whether Reynolds and BSI had notice, actual or constructive, of Marsha's interest in the property before Reynolds' lien was recorded and assigned to BSI. The court, however, did not believe that this cause pivoted on the question concerning the adequacy of Reynolds' notice and instead stated that it depended solely on whether the Kaltezases still retained an interest in the property as of the time Reynolds' judgment lien attached. Thus, the court made no determination as to Reynolds' status under section 30, which clearly applied to the circumstances presented. Without the court's resolution of this issue, what is left is the question as to whether Reynolds is a creditor without notice under section 30, thereby giving him priority over Marsha as the holder of a prior unrecorded conveyance. As shall be discussed in a later section of this opinion, this would largely be a question of fact, precluding the grant of summary judgment. See *Helm v. Kaddatz*, 107 Ill. App. 413, 418 (1903) (whether possession by grantee of unrecorded deed amounts to notice is question of fact); 77 Am. Jur. 2d *Vendor and Purchaser* § 536 (1997) ("whether a judgment creditor was chargeable with notice of the purchaser's possession when the creditor recorded the certificate of judgment" is a question of fact); see also *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 272 (1992) (where more than one inference may be reasonably drawn from facts presented, issue should be decided by trier of fact and summary judgment should not be granted).

Marsha, BPT and BPM rely heavily on *Echols* for the proposition that Reynolds was not a creditor. They contend that because Reynolds obtained a judgment against the Kaltezases only after they had conveyed the property to Marsha, the lien never attached since, at the time the lien was created, the judgment debtor no longer had any interest in the property. The facts in *Echols*, however, are distinguishable from the instant case and, in fact, support the legal view that under section 30, Reynolds may well be preferred to Marsha regarding interest in the property. In *Echols*, a husband and wife were record and registered owners of real estate under "An Act concerning land titles" (the Torrens Act or Torrens) (Ill. Rev. Stat. 1973, ch. 30, pars. 45 through 148). When they decided to divorce in 1966, the husband executed a quitclaim deed conveying his interest to the wife. The wife recorded this deed in 1966 but did not register it with the registrar of titles, as required under Torrens, until 1971. Meanwhile, in 1969, a bank obtained a judgment against the husband, and before the wife registered her quitclaim deed, the bank memorialized its judgment with the registrar and created a lien on the property, which appeared of record with the registrar to still be jointly owned by both the

husband and the wife. The wife brought suit asking the court to order the registrar to remove the judgment lien of the bank and instead quiet title solely in her. The registrar argued that the memorialized interest of the bank, as a judgment creditor, was superior to the interest of the wife, as the holder of a prior unregistered deed.

Our state supreme court declared the issue to be whether, under Torrens, a judgment creditor who has registered his lien after the judgment debtor has conveyed his interest in the property acquires an interest superior to that of a prior grantee from the debtor who did not register his deed. The registrar urged the court to read into the Torrens system the same exception section 30 of the Act gave to judgment creditors, *i.e.*, preference over holders of prior but unrecorded interests. The supreme court, however, disagreed, stating that while "the legislature intended that judgment creditors receive" such preference under section 30, this did not extend under Torrens. *Echols*, 63 Ill. 2d at 277. Since, under the facts in *Echols*, the wife recorded her deed prior to the bank's judgment lien, there was no question as to the wife's protection insofar as section 30 of the Act was concerned. The court then went on to decide the case based on Torrens of registration of title to property. See *Echols*, 63 Ill. 2d at 278-79 (based on the Torrens Act, the bank did not receive preference as the judgment creditor over the wife and, therefore, the wife had sole interest in the property).

Thus, while at first glance the facts in *Echols* may appear similar to those of the instant case, the outcome was clearly determinative of the special circumstances present in that case—namely, the rules under the Torrens Act, which governed *Echols* but do not apply here. In comparing the Torrens system to section 30 of the Act, our supreme court noted that these were markedly different. The *Echols* court explicitly stated that section 30, existing prior to Torrens, "provides that a judgment creditor, as well as a *bona fide* purchaser, who records his judgment in accordance with the provisions of the Conveyance Act [citation] acquires rights superior to those of the holder of a prior unrecorded interest." *Echols*, 63 Ill. 2d at 276. In that regard, section 30 makes no distinction between priorities of a judgment creditor and those of a *bona fide* purchaser who purchases the property after it was already sold to a buyer who failed to record. See 765 ILCS 5/30 (West 1998). Thus, under *Echols*, since Torrens registration is not involved in this case, section 30 is the proper law to be applied. As previously indicated, this leaves open the question as to whether Reynolds (and BSI) had other notice, notwithstanding Marsha's failure to record her

deed. See *Miller*, 381 Ill. at 243; *Beals*, 99 Ill. App. 3d at 844. This issue will be extensively dealt with below.[2]

### B. Marsha's Failure to Respond to BSI's Request to Admit

In determining whether an issue of fact exists with respect to other notice that Reynolds may have had of Marsha's purchase of the property, we must first address BSI's contention that consideration of that issue is barred under Supreme Court Rule 216 (134 Ill. 2d R. 216). BSI claims that Marsha's failure to respond to its request to admit, particularly numbers 11 and 13 dealing with whether BSI had actual or constructive notice of her interest in the property at the time it accepted the judgment lien from Reynolds, effectively became a judicial admission that BSI did not have such notice. Initially, BSI argues that this was an irrevocable admission and binds not only Marsha, but also BPT and BPM because they all "speak with one voice," and accordingly, the trial court could not have considered any evidence to the contrary and should have granted summary judgment in BSI's favor. Alternatively, BSI argues that, at the very least, the admission bound Marsha as a matter of law and left an open question of fact as to BPT and BPM. BSI claims that this question of fact would be created by Marsha's countervailing admission to BPT and BPM's denial. Accordingly, BSI contends that the court's grant of summary judgment to Marsha, BPT and BPM was improper. In response, Marsha, BPT and BPM argue that Marsha's failure to reply to the request to admit, and any judicial admissions resulting therefrom, cannot be imputed to BPT or BPM. Marsha, BPT and BPM also argue that Marsha's failure to respond is completely immaterial to the instant case and that, even if of some import, it was irrelevant because request numbers 11 and 13 were improper in form. While we agree with Marsha, BPT and BPM that Marsha's failure to respond only binds Marsha, we do not agree with them that this is immaterial or irrelevant to the cause at hand.

■ Under Supreme Court Rule 216, a party to an action may serve another party to that action with a written request for his admission of any relevant fact set forth in the request. See 134 Ill. 2d R. 216(a); *P.R.S. International, Inc. v. Shred Pax Corp.*, 184 Ill. 2d 224, 240 (1998) ("any relevant fact" includes questions of ultimate fact). The party

---

[2]We note here that Marsha, BPT and BPM make a cursory argument in their appellate brief that because the deed the Kaltezases gave to Marsha stated that Marsha would own the property even if the deed was not recorded, Marsha's failure to record the deed until after Reynolds and BSI obtained the lien is immaterial. However, section 28 of the Act states that provisions such as this have "no force and effect." 765 ILCS 5/28 (West 1998).

receiving the request then has 28 days in which to either deny or object to the request; if he does not, those factual matters in the request are deemed judicial admissions which cannot be controverted by any contradictory evidence. See 134 Ill. 2d R. 216(c); *Pandya v. Hoerchler*, 256 Ill. App. 3d 669, 673 (1993). The admission then becomes applicable to the pending action, but it "may not be used against him in any other proceeding." 134 Ill. 2d R. 216(e).

In the instant case, BSI submitted its request to admit separately to Marsha, to BPT and to BPM. This request included number 11, stating that there was no "public record or notice" of Marsha's or BPT's interest in the property before 1996, and number 13, stating the BSI had no "actual or constructive knowledge of" their interests. BPT and BPM both timely responded to the request, providing admissions, denials and objections to the questions/statements BSI posed. Marsha, however, never responded.

BSI initially contends that Marsha's failure to respond must be imputed to BPT and BPM because they are Marsha's grantees. We disagree. BSI presents no rule, statute or case which states that judicial admissions resulting from one party's failure to respond to a Rule 216 request to admit must be imputed to other parties in the cause. In fact, *Rowe v. State Bank of Lombard*, 247 Ill. App. 3d 686 (1993), demonstrates the opposite proposition. The court in that case specifically reviewed subsection (e) of Rule 216 and concluded that its language that a party's admissions cannot be used "against him" in any other proceeding save the instant one also means that "an admission is to be used against the party who made it and not against other parties in the suit." *Rowe*, 247 Ill. App. 3d at 696 (if one party makes Rule 216 admissions to another party, those admissions may only be used as between those two parties to matter in that suit, but affects no other party to the suit or any other proceeding other than that suit).

BSI urges a narrow reading of *Rowe*, insisting that its holding affects only parties on opposite sides of litigation whose interests are not identical; because BSI asserts that BPT and BPM are on the same side of litigation with Marsha and share her interest in the cause, BSI contends that *Rowe* does not apply. However, without more than this unsupported assertion, we will not read *Rowe* in this manner. *Rowe* does not distinguish between what sides of the litigation each party is on, nor does it limit its holding to an examination of the similarity of interests each party has in the cause. Instead, *Rowe* provides a general rule that, pursuant to Rule 216, one party's admissions cannot be used against another party in the litigation, but only against himself. See *Rowe*, 247 Ill. App. 3d at 695-96 ("[t]he simple fact that any party

may request an admission does not mean that the admission can then be used *against any* other party" (emphasis in original)). This result should prevail all the more where the admission of one party is inferred by default as a result of a failure to deny rather than by an explicit and overt admission.

Thus, BPT and BPM are not bound by any admission possibly resulting from Marsha's failure to respond to BSI's request to admit. Therefore, since their responses to the request, including numbers 11 and 13 dealing with actual and constructive notice, stand and contradict BSI's assertions that it did not have notice, a question of fact remains regarding notice, at least in relation to these parties, that must be resolved by the trial court on remand. See *Loyola Academy*, 146 Ill. 2d at 272.

■What must also be determined for purposes of remand, however, is whether Marsha's failure to respond to BSI's request resulted in judicial admissions regarding notice to which she herself is bound. As noted above, when a request to admit deals with a question of fact, even an ultimate fact which might give rise to a legal conclusion, a party's failure to respond constitutes a judicial admission of that fact. See *P.R.S. International, Inc.*, 184 Ill. 2d at 236. A request to admit, however, is limited to such questions of fact. See *P.R.S. International, Inc.*, 184 Ill. 2d at 239. That is, if the request seeks the admission of a conclusion of law, the request is improper in form and the opposing party's failure to respond does not result in an admission. See *P.R.S. International, Inc.*, 184 Ill. 2d at 239 ("requests to admit may not include legal conclusions"); *Hubeny v. Chairse*, 305 Ill. App. 3d 1038, 1043 (1999) (if request asks party to make conclusion of law, party's failure to respond is irrelevant and "a trial on the issue" is "required").

■Marsha, BPT and BPM assert in their appellate brief that because the statements in BSI's request to admit dealing with whether BSI had notice of Marsha's interest in the property (specifically numbers 11 and 13) asked for conclusions of law, Marsha's failure to respond to them did not result in an admission that BSI had no actual or constructive notice. Accordingly, we must determine whether numbers 11 and 13 of BSI's request to admit called for admissions of fact or conclusions of law. See *Hubeny*, 305 Ill. App. 3d at 1043. This is a question of law upon which we exercise *de novo* review. See *Hubeny*, 305 Ill. App. 3d at 1043. First, we find that BSI's statement number 11 called for an admission relating to a question of fact. It asked Marsha to admit that there was no public record or notice of her interest in the property before Reynolds assigned his judgment lien to BSI in 1996. Specifically, this relates to a factual conclusion as to whether

there was a public filing or other form of public notice. While conclusory in nature, it nevertheless requires a response and, in its absence, constitutes an admission. See *P.R.S. International, Inc.*, 184 Ill. 2d at 239 (even those ultimate facts which may lead to conclusion of law still require response under Rule 216). Thus, Marsha's failure to respond to statement number 11 of the request to admit constitutes her admission that BSI would not have had actual or constructive knowledge resulting from any public recordation or filing. It still leaves open the question as to whether BSI had actual or constructive knowledge resulting from other conduct or activities. That question is dealt with in statement number 13 of the request to admit.

■ As pointed out, statement number 13 categorically asks Marsha to admit that BSI did not have any actual or constructive knowledge of her interest in the property from any source. Since actual knowledge is a proposition of fact, her failure to answer the statement in number 13 of the request must be regarded as a binding admission that BSI had no actual knowledge. However, the request to admit that BSI had no constructive knowledge calls for a conclusion of law, since by its very terms, the concept of constructive knowledge denotes knowledge by operation of law. See Black's Law Dictionary 1088 (7th ed. 1999) ("constructive notice" is "[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of ***; notice presumed by law"). Marsha's failure to deny that proposition cannot be deemed an admission. See *P.R.S. International, Inc.*, 184 Ill. 2d at 239 (legal conclusion cannot be included in Rule 216 request). Therefore, Marsha's failure to respond to it did not amount to a judicial admission that BSI did not have constructive notice through indicia other than a public filing, covered under number 11 of the request to admit. Accordingly, the circumstances surrounding Marsha's possession of the property now become important to this cause because actions taken by her or on her behalf may have been sufficient to charge BSI or Reynolds with constructive notice, notwithstanding Marsha's failure to record her deed. See *Beals*, 99 Ill. App. 3d at 844 ("where the buyer of property under an unrecorded executory contract has prevailed as against persons claiming under or through subsequent conveyances *** by the seller, it has been due to the fact that the subsequent party was charged either with actual notice of the buyer's rights or with constructive notice thereof").

■ For example, possession of property can be equivalent to the recording of a deed as to a judgment creditor who claims an interest in the property of which another has possession when the creditor secured the judgment. See *Beals*, 99 Ill. App. 3d at 844; see also *Miller*, 381 Ill. at 243 (possession in accordance with deed is notice even if

deed has not been recorded). What constitutes "possession" in this respect will depend on the facts of each case and, thus, becomes an open question of fact. See *Beals*, 99 Ill. App. 3d at 844; 77 Am. Jur. 2d *Vendor and Purchaser* § 464 (1997) ("question [of] whether knowledge of possession will be imputed in any given case is one of fact"). It has been established that one need not live or reside on the property in order to be in possession. See *Carnes v. Whitfield*, 352 Ill. 384, 390 (1933) (actual residence not required for possession); *Beals*, 99 Ill. App. 3d at 844. The "possession" must simply "provide some measure of notice to the outside world of the possessor's interest in the" property. See *Beals*, 99 Ill. App. 3d at 844; see also *Atwood v. Chicago, Milwaukee & St. Paul Ry. Co.*, 313 Ill. 59, 62 (1924) (as long as possession is not occasional or temporary, it amounts to constructive notice, viable against the world, of any rights person in that possession may have). This may include improvements on the property, signs posted thereon, or possession by a tenant of the person claiming possession. See *Carnes*, 352 Ill. at 390 (possession of tenant is constructive notice of rights of landlord in property, even if legal title to property indicates another); *Dana Point Condominium Ass'n v. Keystone Service Co., A Division of Cole Coin Operated Laundry Equipment, Inc.*, 141 Ill. App. 3d 916, 922 (1986) (signs and stickers placed on property sufficient to indicate possession); *Beals*, 99 Ill. App. 3d at 844-45 ("[i]mprovements or acts of dominion over" property may be sufficient to constitute possession). Whatever the actions, they are sufficient to constitute possession if they provide notice of who has control of the property. See *Beals*, 99 Ill. App. 3d at 844. That is, as long as the holder of a prior unrecorded deed is in "possession" of the property that is "actual, open and visible," his interest will be given priority to a judgment creditor who obtained a lien from a judgment entered subsequent to the deed. See *Adam v. Tolman*, 77 Ill. App. 179, 182-83 (1898); see also *Brainard v. Hudson*, 103 Ill. 218, 222 (1881) ("[w]here a person is in the possession of a tract of land under an unrecorded deed, that possession is notice to all subsequent purchasers or incumbrancers of whatever title is held by the person in possession, and a subsequently acquired title, although first on record, will be held subject to the title which the person in possession may have to the property"). This is because the creditor, who had been placed on constructive notice by this possession, is bound to inquire of the person in possession what right or interest he holds, and takes subject to what the right or interest may be. See *Union Bank of Chicago v. Gallup*, 317 Ill. 184, 188-89 (1925); *Burnex Oil Co. v. Floyd*, 106 Ill. App. 2d 16, 22-23 (1969) (creditor cannot claim innocent status once he is bound to inquire; for he is "chargeable with knowledge of facts which are inconsistent with the claims of ownership by the record owner").

■ In the instant case, several actions taken by Marsha and Saul (who, it was alleged, was Marsha's agent in relation to the property) were presented to the trial court which may indicate that Marsha had "possession" of the property before Reynolds obtained the judgment lien and before BSI was assigned this lien, thereby putting them on constructive notice of her interest. These include the following: Saul appeared in court during the building code violation case on the property—to which Reynolds too was a party—and filed an appearance and announced he was the new owner of the property; Saul and Marsha paid taxes to redeem the property, as well as the water bill and brokers' commissions; they dealt with the local police and State's Attorney's office to resolve the building code case; they worked on the property and repaired it to have that case dismissed; they went to the assessor's office and changed the records to reflect their corporation, Westridge Realty, as the new assessee on the property; they leased the property to tenants; they put a sign in the window of the building announcing that Westridge Realty was managing and rehabilitating the property; and Saul told Reynolds' attorney that he had purchased the property from the Kaltezases. These facts may constitute "possession" of the property on the part of Marsha, thereby charging Reynolds and BSI with constructive notice of her interest even though she did not record it until after the judgment lien was entered. This ultimately leaves open a question of fact that precludes summary judgment in the instant case as to Marsha, as well as to BPT and BPM, and mandates remand. See *Loyola Academy*, 146 Ill. 2d at 272.

## C. The Levy and Sale

Finally, we examine the procedural propriety of the levy and sale. Marsha, BPT and BPM argue that the levy proceedings and sale of the property to BSI were "fatally flawed" because BSI was required to serve Marsha, BPT and BPM with notice of the proceedings before they occurred and its failure to do so interfered with their due process rights. BSI counters that the levy proceedings were properly conducted because it served the Kaltezases with notice of the levy, published notice of the sale in the newspaper, recorded the certificate of sale and eventually sent notice to BPT. We find that issues of fact remain regarding the propriety of the levy and sale, further requiring the reversal and remand of this cause.

■ The Property Tax Code requires a tax purchaser to serve notice of sale of the property, by abode service and by certified mail, upon all those holding an interest in the property if their identities can be discovered by diligent inquiry. See 35 ILCS 200/22—15 (West 1998); *In re Application of Ward*, 311 Ill. App. 3d 314, 318 (1999).

Diligent inquiry is that which is determined a diligent person intent on discovering a fact would reasonably make. See *In re Application of the County Treasurer & ex officio County Collector of Cook County for Order of Judgment & Sale Against Real Estate Returned Delinquent for the Year 1985*, 216 Ill. App. 3d 162, 170 (1991). Whether the purchaser's actions are sufficient to comprise due diligence in determining the identities of, and providing notice to, those who hold an interest in the property is a question of fact. See *In re Application of the County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes and/or Assessments for the Year 1985 & Prior Years*, 219 Ill. App. 3d 396, 404 (1991).

█ The only evidence included in the record with respect to this issue is the deposition testimony of BSI's president, McClure. That testimony turns in two directions. First, McClure testified that he learned about Marsha's, BPT's and BPM's interests in the property some time after they were recorded. However, he does not specify when, in relation to the sheriff's levy and sale, he obtained such knowledge. McClure later testified in that deposition that he made periodic searches of certain public records at the time of the levy but did not discover any interest in the property listed. Accordingly, this testimony is inconclusive and, at best, is subject to conflicting inferences as to what BSI knew when the levy proceedings were initiated and conducted, and as to whether the requisite information was ascertained or ascertainable through exercise of due diligence. Therefore, because an analysis of what is included in the record here at best results in conflicting inferences, summary judgment was improper. See *Amsted Industries, Inc. v. Pollak Industries, Inc.*, 65 Ill. App. 3d 545, 549 (1978) (where reasonable men may differ, "questions of fact cannot be determined as a matter of law" and summary judgment is precluded). We note that there is nothing further in the record to edify us regarding this information, as well as to any other information relevant to this issue. There is nothing in the record to clarify whether the levy proceedings, which initially commenced in 1996 but were then "reinitiated" later, were continued or begun anew. Furthermore, the record is silent as to whether Marsha's name appeared on record as a holder of interest and in what capacity, whether BPT's name was listed, or whether BPM was recorded as the mortgagee. It remains to be determined upon remand to what degree any one, or all, of these parties could have been ascertained through "due diligence," if any was taken, on the part of BSI. See *County Treasurer*, 216 Ill. App. 3d at 169-71, relying on *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 800, 77 L. Ed. 2d 180, 188, 103 S. Ct. 2706, 2712 (1983) (general rule is that notice of tax sale served upon

trustee is deemed notice to beneficiary; however, this rule may not apply when beneficiary is reasonably ascertainable from search of public records, thereby requiring separate personal notice; this is true for mortgagees as well).

## CONCLUSION

Accordingly, because we find issues of fact regarding actual and constructive notice on the part of BSI of Marsha's, BPT's and BPM's interests in the property, and because questions of fact remain regarding the levy and sale, we reverse the holding of the trial court and remand this cause for further proceedings consonant herewith.

Reversed and remanded.

McNULTY and COHEN, JJ., concur.